By the Court. Duer, J.
Whether the judgmént, which, in *271 this case, has been rendered against both the defendants for the heavy damages which were found by the jury only against one of them, is erroneous on its face, we shall not at this time attempt to determine. We own, that hitherto we have not been able to discern the equity or good sense of the doctrine, that the plaintiff in an action for a tort, when the jury have improperly severed the damages, may enter his judgment against all the defendants for the largest damages that are given; and, as at present advised, if the conflict of the authorities is such as to allow a liberty of choice, we should certainly refuse to follow it. (Vide 1 Duer S. C. R., pp. 643-704.) It is possible that the authorities in support of the doctrine may be as conclusive as they have been represented; but whether they are so or not we omit to inquire, since, admitting the fact, there are other grounds upon which we are satisfied that not only the judgment, hut the verdict upon which it was founded, must be set aside. In other words, that a new trial must be ordered.
In order to maintain a suit for a malicious prosecution, the plaintiff is bound to prove the entire want of a prohable cause for the accusation, and the actual malice of the -defendant in preferring it. Malice is a question of fact, which, when the cause turns upon it, must be decided by the jury, but probable cause is in all cases a question of law, which the court alone is competent to determine, and in relation to which the judge who tries the cause is bound to express a positive opinion. It is true, it is said, by many of the text writers, that probable cause is “ a mixed question of law and factand, misled by this statement, it not unfrequently happens that judges content themselves with defining a probable cause,-leaving the jury to decide whether the facts of the case correspond with the definition, which is, in effect, leaving the whole matter to their determination. It is evident, however, upon reflection, that the deceptive phrase, “ a mixed question of law and fact,” is either wholly unmeaning, or is intelligible and true only in a sense which renders it just as applicable to every question of law that a judge in the progress of a trial can be required to determine. Every rule of law depends for its application upon a given state of facts, and when the facts upon which it depends are controverted and doubtful, they must of necessity be ascer *272 tained by the verdict of the jury ; but whether the facts are admitted or disputed, it is equally the duty of the judge to state explicitly to the jury the rule of law arising upon them, by which their verdict ought to be controlled—the only difference being, that, in the first case, the direction to the jury is positive, in the second, hypothetical. Thus, in an action for a malicious prosecution, if the judge is of opinion that the facts admitted or clearly established are not sufficient to prove a want of probable cause, he must either nonsuit the plaintiff, or instruct the jury to find their verdict for the defendant; but if the facts upon which, in his judgment, the question depends are rendered doubtful by the evidence, he must instruct the jury that if the facts shall be found by them in a certain manner, they do or do not amount, as the case may be, to a want of probable cause, and consequently will, or will not, entitle the plaintiff to the verdict which he seeks. If, instead of such a direction, he leaves it to the jury to determine not only whether the facts alleged by the plaintiff are true, but whether, it* true, they prove a want of probable cause, he abjures his own functions, and commits a fatal error.
We deem it unnecessary to refer to any cases in the English reports, or in our own, in support of these positions, since, could we have been justified in considering the law as previously doubtful, we are bound to regard it as now settled by the recent decisión of the court of appeals reversing the judgment of this court, and ordering a new trial, in the very case that is now before us. The ground of this reversal was, that the judge told the jury that it was their province to determine whether the facts and circumstances in evidence did or did not establish the want of probable cause, thus leaving the whole matter to their determination, instead of expressing his own opinion as to the conclusion of law to be drawn from the facts, as alleged by the plaintiff, should the jury believe them to be proved.
Round as we are by this decision, we are constrained to say that the charge of the presiding judge upon the last trial, was just as erroneous as that which led to the reversal of our former judgment, as from the terms in which it was expressed, it necessarily involved the submission to the jury of the question of probable cause, and was not limited to the facts upon which *273 the question depended. He instructed the jury, that they were to consider and determine whether the facts and circumstances known to the defendants were reasonable grounds for their believing that the charge which they made against the plaintiff was true, and we are unable to make a distinction between the existence or non-existence of reasonable grounds of belief, and the existence or want of a probable cause. There is a difference in the form of expression, but none in the meaning, since the existence of reasonable grounds for believing a charge to be true, is, in reality, nothing more than a legal definition of a probable cause for making it. In deciding that there-were no reasonable grounds of belief, a jury, of necessity, decides that there was a want of probablti cause. The charge of the judge, therefore, amounted to no more than the definition which the law gives of probable cause, and permitted the jury, in the exercise of their own judgment, to apply the definition to the facts of the case—that is, permitted them to determine whether the facts which they might consider to be proved, did or did not amount to a want of probable cause. It was because this question upon the first trial was decided by the jury, and not by the judge, that our former judgment was reversed.
The judge, in the charge before us, also submitted to the jury, as a material question, whether the defendants themselves believed the charge against the plaintiff to be true when they preferred it; and it is not impossible, nor improbable, that it was npon the ground of the disbelief of the defendants that the jury founded their verdict. We apprehend, however, that when in an action for a malicious prosecution the existence of facts constituting a probable cause is admitted or established, the presumption of law is, that the defendant entertained and acted upon the belief which the circumstances within his knowledge justified him in holding; nor have we found a single case in which, under these circumstances, the question of the actual belief of the defendant has been submitted to the decision of the jury. We do not say that cases may not arise in which this submission of the question might be eminently proper, but we are clearly of opinion that this can only happen when the presumption of law, to which we have adverted, is .met and affirmative on the of the *274 plaintiff. (Vide Carpenter v. Shelden, 5 Sand. 97, Nos. 5 and 6.)
In the present case, if the defendants did not believe the charge which they made against the plaintiff, they were guilty, in the affidavits upon which the charge was founded, of wilful and deliberate perjury; and, looking at all the evidence in the case, it seems to us it would be monstrous to say that the jury could be justified in drawing such a conclusion, and if not warranted to draw the conclusion, the question involving it ought not to have been submitted to their determination.
Eight or ten of the witnesses examined on the trial swore substantially to the same facts as the defendants.
They were, all of them, disinterested and unimpeached, and it has not been pretended that they did not sincerely believe that the facts to which they swore had actually occurred. They may, all of them, have been mistaken ; but it appears to us, that a jury could no more be justified in imputing to the defendant the guilt of intentional falsehood, than to the witnesses by whom they "were sustained. If, therefore, the verdict of the jury, as was asserted upon the argument, proceeded upon this supposition, their verdict, even could we admit that the question was properly submitted to them, we are bound to say, is unsustained by the evidence; and upon that ground alone, were there no other, ought to be set aside.
The observations that have now been made are sufficient to justify us in granting a new trial, but they do not cover all the questions that have been raised, and which, in order that this protracted litigation may be closed, it seems necessary to determine. We have, therefore, felt it° our duty to examine, with care, all the evidence that was given upon the trial, and we now state, as the result of the examination, our full conviction, not only that the plaintiff failed to prove, as he was bound to prove, the want of a probable cause; but that, confining ourselves to undisputed facts, the existence of a probable cause was affirmatively shown. He might, therefore, have been rightfully nonsuited, or the jury have been positively instructed to find a verdict in favor of the defendants.
The charge against the plaintiff was, that when examined as a witness in the suit in the common pleas, he had falsely sworn *275 that he had no interest in the event of the suit; and the material inquiry is, whether the defendants were justified in believing that such was the testimony that he actually gave; that if he gave this testimony, his subsequent acts and declarations justified them in believing it to be false, was in effect decided by the chief justice upon the trial; and, judging from the opinion of Mr. Justice Gridley, with which we have been furnished, was plainly meant to be decided by the court of appeals.
Mow the truth of the proposition seems to us too manifest to require an argúment, that in order to justify the defendants it was not necessary for them to prove that the plaintiff had sworn, in terms, that he had no interest in 'the event of the suit in which he was examined, or that the question whether he was so interested or not, was directly put to him. If he was cross-examined for the purpose of showing that he had an interest beyond that which belonged to him as the attorney of the plaintiff, and which rendered him incompetent as a witness; and if, when thus examined, he swore to facts that, if true, conclusively proved that he had no interest that could affect his testimony, the existence of a probable cause for the charge subsequently made against him was, in our judgment, conclusively established. It was conclusively established, if he swore in substance, although not in words, that he had no interest that could disqualify him as a witness.
Mow, when we read, with any attention, the testimony of his own witnesses, who were present at his examination in the common pleas, it is evident that the object of his cross-examination, and the purport of the testimony which he then gave, were exactly such as have been stated. By the confession of those witnesses, he did swear in substance, although not in words, that he had no interest in the event of the suit. Those witnesses, Messrs. Sandford, McClelland, and Russell, it is true, unite in saying that the plaintiff was not asked at all whether he was interested in the event of the suit, and consequently could not have replied as the defendants had sworn, that he had no such interest; but they also unite in saying that he was asked whether there was any agreement between him and his client, and that in his reply he positively denied that any such *276 agreement existed. We think it cannot be doubted that the object of this question was to ascertain whether he had any interest beyond that which belonged to him as the attorney (and which the court had already decided was not sufficient to disqualify him), that by proving his incompetency, would compel the court to reject his testimony, since such an interest, if it existed, could only be founded on or derived from a positive agreement between him and the plaintiff in the suit; and it is undeniable that the plaintiff affirmed, by a necessary implication, that he had no interest in the event of the suit, by denying the existence of any agreement from which the interest could have been derived.
Nor is this all: that such was understood at the time to be the object of the question, and such the effect of the reply, is distinctly stated by the witness, Eussell, who says that the question was asked, “ to find out whether the verdict was to go to the plaintiff’ or the lawyer,” and that he understood from the reply that it was to go to the plaintiff, Bradley,, alone. The witness, therefore, understood the plaintiff as swearing that he would have no interest in the verdict he was endeavoring to obtain; and this, under the circumstances, was precisely equivalent to saying that he had then no interest in the event of the suit.
Let us now suppose that the defendants, in the affidavits which they laid before the police magistrate, had stated the testimony of the plaintiff exactly as it has been stated by the witnesses we have named, and, in order to prove the testimony to be false, had then produced the letter which he addressed to the defendant, Smith, on the day immediately following the verdict, and in which, by force of a power of attorney from his client—a document which, if it existed at all, must have been in his possession when he gave his testimony—he claimed an exclusive title to demand payment of the judgment, and in truth, by stating the power to be irrevocable, claimed to be its exclusive owner, could it then have entered into the mind of any one to imagine that the present action could be maintained? Is it not plain that the plaintiff, under these circumstances, so far from having a right to say that there was-no probable cause for the charge of perjury, could only have *277 escaped from the imputation, by showing that the testimony which he gave was true, and the assertions in his letter wholly false. That the defendants believed these assertions in preference to his testimony, certainly afforded to him no just cause of complaint, since the letter was evidently written with the intent that the defendants, Smith and Keteltas, should believe its contents to be true, and in the expectation that this belief would influence their conduct. And we assent entirely to the position of Mr. Justice Washington, that when it appears, in an action for a malicious prosecution, that the plaintiff, by his own folly or fraud, exposed himself to a well grounded suspicion of guilt, this alone is sufficient evidence of probable cause. (Wilmarth v. Mountford, 4 Wash. C. C. R., p. 82.)
The ease, as it now stands, in our judgment, rests substantially upon the same grounds, and is governed exactly by the same considerations, as if the affidavits of the defendants had been made in the form that has been stated; for the supposition that the defendants could only meet the allegation of a want of probable cause, by showing that the plaintiff, when examined in the Common Pleas, had sworn in express words, that he had no interest in the event of the suit, we cannot at all hesitate to reject. We have already said that the existence of a probable cause was established, by showing that the intent and the result of his testimony was to convince the court and jury that he had no interest in the event of the suit that could lead to the rejection of his evidence; and this, we have seen, his own witnesses have proved.
Finally, had the true and sole issue been, whether the testimony of the plaintiff was given in the very words that are found in the affidavits of the defendants, we should still have felt it our duty to set aside the verdict that was rendered.
There is a great preponderance of unimpeached and unsuspected testimony, that the language of the plaintiff was exactly such as the defendants represented, and such are the doubts necessarily arising upon the whole evidence, that even had the question been such, as we have supposed, the presiding judge, in our opinion, would have been fully justified in telling the jury that the plaintiff had failed to establish, by the necessary proof, the want of a probable cause, and that .the *278 defendants were consequently entitled to the verdict. Since the great leading case of Johnstone v. Sutton (Term. R. 544), the law is settled, that the essential ground, in the language of Lord Mansfield, of the action for a malicious prosecution, is the want of probable cause, and that, in all cases, this must be substantially and expressly proved. It follows that when the evidence is doubtful, it is in favor of the defendant that the doubt must be determined.
It is not to be understood that in granting a new trial, we mean to express any approbation of the conduct of the defendants, and more especially of the defendant, Smith. The jury may well have thought that in persisting, as he did, in the prosecution of the plaintiff, he was actuated not at all by a sense of public duty, but solely by motives of private revenge. Had the sole question been, whether the imputation of express malice was justified by the evidence, we could not have disturbed the verdict that was given. It is true, that from, the entire want of probable cause, malice may be inferred, but the converse of the proposition is by no means true, that where express malice is proved, the want of probable cause may be implied. Still less is it true, that damages' may be given to punish the malice, even when the existence of probable cause is fully established. It is into this' error, however, that the jury appears to have fallen.
Verdict set aside, and a new trial ordered, with costs to abide the event.