## MILLER vs. MILLIGAN.

To maintain an action for a malicious prosecution, the plaintiff must prove, 1st. That the defendant instigated the prosecution against the plaintiff; 2d. That such prosecution was without probable cause; 3d. That it was accompanied with malice, and terminated favorably to the party prosecuted.

Malice, and a want of probable cause for the former suit, must *both* be alleged and proved. If there was probable cause, the action cannot be maintained, even though the prosecution complained of was malicious.

Want of probable cause cannot be inferred from any degree of malice which may be shown.

If there is an absence of proof to show that the defendant was the real prosecutor in the former suit; or if he was, that he was without evidence or circumstances justifying a *reasonable suspicion* of the truth of the charge then made, the plaintiff should be nonsuited, and has no legal right to ask a submission of the facts to the jury.

Whether or not the defendant instigated the prosecution complained of, against the plaintiff, is a question of fact for the jury; and if there is *any* evidence whatever, upon that point, however slight it may be, the court is not authorized to dismiss the complaint and take the case from the jury.

What constitutes probable cause.

It does not depend upon the actual guilt or innocence of the accused, but upon the *belief* of the prosecutor concerning such guilt or innocence.

The real question is, whether the defendant had reasonable ground for believing that the plaintiff was guilty of the charge made against him. This belief may be founded upon facts within the knowledge of the party, or upon information derived from other persons.

If he has positive proof of the facts, in the affidavit of another, and he believes the truth of that person's statement, and proceeds against the plaintiff upon that proof, and under a belief in its truthfulness, he will be deemed to have had probable cause for so doing.

It is sufficient that such information was furnished to the defendant, as of itself would authorize and justify his action. The force and efficacy of the information will not be diminished by the introduction of evidence to show probable cause for the defendant's action, upon other and different grounds.

If the testimony on the trial is conflicting and contradictory and cannot be well reconciled, the question whether there was probable cause should be submitted to the jury.

THIS cause comes before this court upon exceptions ordered to be heard at general term in the first instance. It is an action for malicious prosecution. The plaintiff was arrested, indicted, and tried in the district court of the United States,

upon a charge of having, on the 23d day of November, 1863, at Windham, Greene county, induced one Shears to escape from the custody of the defendant, who had him under arrest as a deserter from the United States army. The plaintiff was acquitted upon the said trial, and brings this action to recover damages against the defendant upon the ground that the prosecution against the plaintiff was instigated by the defendant, and was without probable cause. The court non-suited the plaintiff, who now applies for a new trial.

*D. K. Olney,* for the plaintiff.

*T. R. Westbrook,* for the defendant.

INGALLS, J. To maintain this action, the plaintiff was compelled to prove : 1. That the defendant instigated the prosecution against the plaintiff. 2. That such prosecution was without probable cause. 3. That it was accompanied with malice. (*Besson* v. *Southard,* 10 *N. Y. Rep.* 236. *McKown* v. *Hunter,* 30 *id.* 625.)

In support of the first proposition, the plaintiff proved the declaration of the defendant to the witness *William Fairchild,* who testified as follows : "I had a conversation with the defendant about Miller's arrest. I was coming from Poughkeepsie in the cars, and Milligan got into the cars and took a seat beside me in the car ; he had a man with him. I said, *I hear that you had arrested Miller.* My wife had written to me while I was in the army, that you had arrested him, and that he was under heavy bail for helping a deserter to escape. *He said yes, that was so.* I asked him if it had been tried yet. He said *no.* I asked him how he thought it would go ; that it must have cost Miller considerable. He said it would go well enough, *for he would make it cost him a nice pile before he got through, and he would learn him not to get another deserter off.* I told him I did not think Miller had any thing to do with it ; he said he did.

The affidavits upon which the warrant of arrest was issued were prepared by the defendant, who attended the trial upon the indictment, and was sworn as a witness for the prosecution, and sat beside the district attorney during the trial, *and advised and consulted with him.*

*James B. Olney* testified, that as counsel for Milligan he accompanied him to New York, where he was arraigned upon the indictment, and when they reached New York they saw the commissioner and district attorney. The witness further testified: "I was *referred to Milligan,* and was shown the affidavit which has been read in evidence. I endeavored to get the proceedings stopped, and have a nolle prosequi entered, *but could do nothing without seeing Milligan.*"

In opposition to this evidence, the defendant testified that he was clerk and special deputy of the board of enrollment, and was instructed by the board to draw his own and Shears' affidavits, which he did, and delivered them to Joshua Fiero, Jr. the provost marshal, who forwarded them to the United States district attorney in the city of New York, and had nothing further to do with it; and did not in any manner ask that a warrant issue against the plaintiff, and was not actuated by any malice in what he did; that he attended the trial in New York as a witness, under a subpœna, and not by the district attorney by request from him.

On cross-examination, he further stated: "I presented the case to Fiero before the affidavits were made; don't know what I told him. I spoke of the unfinished business in the office, and of this in that connection. I don't know as I urged him to have the affidavits made and forwarded to the district attorney; may have done so;" "will not swear I did not go to the district attorney about this case between sending the papers and issuing the warrant."

*Joshua Fiero,* the provost marshal, testified that the defendant stated to him the circumstances attending the escape of Shears, and he wrote to the district attorney for instructions, and directed the defendant to prepare the affida-

vits, and when they were prepared, he sent them to the district attorney, and did not think he was influenced by Milligan to do so.

*George T. Pierce*, testified that the affidavits were prepared by order of Fiero and himself, and that he told Milligan to prepare the affidavits.

The plaintiff testified that on his way to New York, after the arrest, he, in company with Milo C. Osborn, saw Fiero at his store, who told him that the *defendant entered the complaint*, and that he advised Milligan not to make the complaint; and that he had had nothing to do with prosecuting the case; *that Milligan had.*

*Milo C. Osborn*, testified that he went to Fiero's store with the plaintiff. That Fiero said Milligan was the *complainant in the case*, and did not claim that he, Fiero, had any thing to do with it. The evidence upon this branch of the case is conflicting; but, in my judgment, it does not so clearly preponderate in favor of the defendant as to justify a refusal to submit the question to the jury. The positive admission of the defendant that he caused the arrest of the plaintiff, and that he would make it cost him a nice sum before he got through with the matter, is proved by one witness, and such declaration is consistent with the conduct of the defendant during the whole course of the prosecution.

Again, the declaration of Fiero in the presence of the plaintiff and Milo C. Osborn, is inconsistent with his evidence, and tends to weaken it, and presented a question appropriate for the consideration of the jury.

In regard to the second proposition, whether the prosecution was without probable cause:

In *Foshay* v. *Ferguson*, (2 *Denio*, 619,) in defining what constitutes probable cause, Bronson, J. remarks, "Probable cause has been defined, a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a *cautious man* in the belief that the person accused

is guilty of the offense with which he is charged." The evidence upon that question is also conflicting. If the testimony of the defendant and Shears is to be adopted as the true version of the transaction at Miller's house on the 23d November, 1863, it is very clear that the defendant was fully justified in attributing to the plaintiff the effort to induce Shears to escape. But on the other hand, if the evidence of the plaintiff is to be credited, supported as it is by the testimony of Ryder, Peck, and Johnson, as to what occurred on that occasion, and also by the evidence of Osborn, as to what the defendant stated to him, and which is as follows: "*The next day after the escape, I had a talk with the defendant.* He spoke about the deserter getting away. I asked him if he thought Miller had any thing to do with it, *and he said no, I don't think he did;*" also his statement to William H. Steele, in substance, that he did not believe the plaintiff had any thing to do with the escape of Shears. I am quite as confident in the opinion that there was an entire absence of evidence to justify the belief, or well grounded suspicion, that the plaintiff caused, or participated in such escape.

If this view of the evidence is correct, it follows that the plaintiff was entitled to have that question also submitted to the jury.

In regard to the third proposition, whether the prosecution was accompanied with malice. If such prosecution was instigated by the defendant, and was without probable cause therefor, malice might be implied. In *Hall* v. *Suydam,* (6 *Barb.* 86,) Paige, J. remarks: "The want of probable cause cannot be inferred from express malice ; *but malice may be implied from the want of probable cause.*" Again, if Fairchild is to be credited, there is direct evidence of malice. At all events, there was evidence upon that question which the plaintiff was entitled to have submitted to the jury. The plaintiff's counsel objected to the nonsuit, and requested the court to submit the several questions to the

Miller *v.* Milligan.

jury, which was refused, and the plaintiff excepted. The question then arises, was the nonsuit properly ordered?

In *Bulkeley* v. *Keteltas,* (6 *N. Y. Rep.* 384,) Gridley, J. says: " When there is no dispute about the facts, the question of the want of probable cause is for the determination of the court. Where the *facts are controverted or doubtful, whether they are proved or not, belongs to the jury to decide;* or, in other words, whether the circumstances alleged are true, is *a question of fact."* In *Besson* v. *Southard,* (10 *N. Y. Rep.* 239,) the court, in discussing the question of probable cause, remarks: " This question is composed of law and facts, it being the province of the jury to determine whether *the circumstances alleged are true or not,* and of the court to determine whether they amount to probable cause." *(Id.* 240.) " If the facts which are adduced as proof of a want of probable cause are contradicted, *if conflicting testimony is to be weighed,* or if the credibility of witnesses is to be passed upon, *the question of probable cause should go to the jury with proper instructions as to the law."* (*See also Stevens* v. *Lacour,* 10 *Barb.* 66.)

In *Masten* v. *Deyoe,* (2 *Wend.* 426,) Marcy, J. remarks: "If the testimony, *uncontroverted and viewed in the most favorable light,* would not authorize a verdict for the plaintiff, a judge is not obliged to submit the case to the jury; but he may, and it is generally conceded he should order a nonsuit. If in the exercise of this duty a judge withholds from the jury a cause which should have been submitted to them, this court always interferes and orders a new trial." *(Id.* 428.) " But nonsuits should only be granted in cases where there is nothing for the jury to pass upon, or *where there is no evidence of a want of probable cause."* (*Id.* 429.) " *If,* however, the facts are controverted, or in any wise the weight of conflicting testimony is to be ascertained, or the credibility of witnesses estimated, the evidence must go to the jury."

From a careful examination of this case, I am led to the

conclusion that the evidence bearing upon the material questions involved in this controversy was too conflicting to justify the court in its refusal to submit the case to the jury under proper instructions in regard to the law. There are also questions of credibility raised by the evidence, which it is the province of the jury to pass upon. Assuming the evidence produced by the plaintiff to be true, I think it can hardly be doubted but that a cause of action was sustained within the reasoning of Justice Hogeboom, in *McKown* v. *Hunter*, (30 *N. Y. Rep.* 625,) in which the learned justice remarks: "This is an action for malicious prosecution, and its essential elements are want of probable cause and malice. These it belongs to the plaintiff affirmatively to prove, *or to introduce evidence in regard to them from which they may be legitimately inferred.*" The evidence on the part of the defendant, while it tended to disprove the plaintiff's case, created an issue of fact which should have been submitted to the jury. I am, therefore, of opinion that the plaintiff should not have been nonsuited, and that a new trial should be granted, with costs to abide the event.

Hogeboom, J. The essential elements of this action are well understood. They consist of a previous *unfounded prosecution* of the plaintiff by the *defendant,* commenced *without probable cause*, conducted with *malice,* and *terminating favorably* to the party prosecuted. (*Vanderbilt* v. *Mathis*, 5 *Duer*, 304. *Foshay* v. *Ferguson*, 2 *Denio*, 617. *Besson* v. *Southard*, 10 *N. Y. Rep.* 236. *McKown* v. *Hunter*, 30 *id.* 627.)

In regard to these, the burthen of proof rests on the plaintiff, and he must establish each of these several propositions, or fail in his action. It is often said, in a general way, that malice and the want of probable cause are the ingredients of the cause of action; but it is plain that the other ingredients are implied or understood to exist. (*Vanduzor* v. *Linderman*, 10 *John.* 106. *McCormick* v. *Sisson*, 7 *Cowen*, 715.

Miller *v.* Milligan.

*Bulkeley* v. *Smith*, 2 *Duer*, 261. *Van Latham* v. *Rowan*, 17 *Abb. Pr.* 238, 248. *McKown* v. *Hunter*, 30 *N. Y. Rep.* 627.)

Thus in general, very little is said about the *defendant* having been the prosecutor, because the question ordinarily is not the subject of dispute, and because, generally, the defendant was the adverse party in the action or proceeding which constituted the gravamen of the action for malicious prosecution. But it plainly lies at the very foundation of this action that the plaintiff must show that the *defendant*, and not somebody else, has prosecuted him—has been the *real party*, in fact, who has set on foot and conducted the proceedings against him. This prosecution may have been in the form of a civil action or of a criminal proceeding; and when not conducted in the *name* of the offending party, it would doubtless suffice to prove that he was the *real* party, the *mover*, and *manager* and *controller* of the prosecution. If he were the mere *clerk* or *agent* of others, or a mere *witness* in the transaction, he would not hold the character, nor be liable to the penalties, of a malicious prosecutor.

So the plaintiff must aver and prove that the prosecution claimed to be malicious is terminated in his favor. (*Gorton* v. *DeAngelis*, 6 *Wend.* 418. *Clark* v. *Cleveland*, 6 *Hill*, 344. *Hall* v. *Fisher*, 20 *Barb*. 441.)

Proof that the prosecution complained of was instituted through *actual malice* is not enough to sustain the action. (*Foshay* v. *Ferguson*, 2 *Denio*, 617.) In an action for malicious prosecution the plaintiff must allege and prove *both* malice and a want of probable cause for the former suit. If there was probable cause the action cannot be maintained, even though the prosecution complained of was malicious. Want of probable cause and malice must concur, and the former cannot be inferred from any degree of malice which may be shown. (*Besson* v. *Southard*, 10 *N. Y. Rep.* 236. *Bulkeley* v. *Smith*, 2 *Duer*, 261.)

I allude to these familiar rules not for the purpose of

establishing their existence, but merely to bring to mind how strict and exacting the courts have been in enforcing them.

In the present case I was of opinion at the trial that in two at least of the particulars essential to constitute the cause of action, there was a lack of evidence to justify a recovery, and I am still of the same opinion. As there is a difference of opinion on that question, it will be indispensable to recur to the evidence.

1. Was there sufficient evidence on the point that the *defendant* was the party who had prosecuted the plaintiff? The charges in the complaint in substance are,

(1.) That Milligan *appeared* before United States Commissioner Osborn and *charged* Miller with having procured and enticed Shears to desert from the service of the United States.

(2.) That Milligan afterwards caused his arrest and imprisonment.

(3.) That Milligan afterwards appeared before a grand jury, at a circuit court in New York, and charged him as aforesaid, and caused him to be indicted for the aforesaid offense of enticing Shears from the service, and to be arrested and imprisoned therefor.

All these allegations were put in issue by the defendant, and I regard them as *wholly unproved.* There is *no evidence whatever* that Milligan ever *appeared* before the United States commissioner for any purpose, or there charged Miller with having enticed away Shears; or that he ever *caused* his arrest or imprisonment; or that he *ever* appeared before the grand jury, or on the trial of the indictment, otherwise than as a witness. Indeed there is no evidence that he ever *appeared* and *testified* before the grand jury, although there is evidence that he was *subpœnaed* to attend the grand jury and the trial *and went* both times. There is nothing whatever in his conduct on either of these two occasions which tends to implicate him in any way beyond any other witness. Moreover, what was done at the *trial* was not in the nature of a malicious *prosecution;* he was not the party, nor could

Miller *v.* Milligan.

he *control* the *proceedings ;* nor was he in anywise *responsible* for them further than as having *instigated and set them on foot,* and made himself the real prosecutor, *if he did so;* and that is the question in the case. The evidence on that question is all but unanimous and uncontradicted in favor of Milligan ; and I think the contrary would not support a verdict, and that the court would be bound to set it aside. If so, the plaintiff could not lawfully ask its submission to a jury.

(1.) The *defendant* swears that he drew up the affidavits (his own and Shears') by the *instruction* of the board of enrolment (being their clerk and special deputy ;) that he delivered the affidavits to the board ; that he had *nothing further* to do with it, and did not *in any way* or manner ask a warrant to be issued ; that Fiero, the marshal, sent the affidavits to New York.

(2.) Fiero, the marshal, expressly swears that *he* instructed Milligan to make his affidavit, and draw that of Shears, and that *he* acted under the instructions of the district attorney.

(3.) Pierce, the commissioner of the board of enrolment, swears that *he* told Fiero to prosecute Miller, and that the affidavits were prepared *by order* of Fiero and Pierce.

This testimony is substantially uncontradicted. A reference is made to the testimony of *Fairchild* and *Olney* as furnishing counter evidence, but its weakness and inconclusive character show it not to amount to a contradiction. Fairchild is one of those witnesses who is shown to have *enlisted* three or four times, when he was in each instance legally disqualified. He testifies to a *conversation* with Milligan in which he says to Milligan : " I heard that you had *arrested* Miller and that he was under heavy bail for helping a desrter to escape." Milligan said, " Yes, that is so." I regard this testimony as wholly *inconclusive.* The phrase " you had arrested Miller" might well refer to the action of the *board,* for whom Milligan was clerk, and not to the individual action of Milligan himself. Moreover an *arrest* by one party does not imply that the *prosecution* is by the same

party. Milligan might well have *arrested* Miller, without having in any way been concerned in his prosecution. Many an innocent constable would be liable to an action for malicious prosecution if such were the rule.

The other testimony relied on is that of a highly respectable witness, Mr. Olney. But his testimony, which was as to the *conversations* of Mr. Milligan, tends directly to *exculpate* the latter. In that conversation, Milligan uniformly says he is *not* the prosecutor—that he had *nothing to do with it*, and was only a passenger : it is the *board*, (not himself.)

The only additional evidence is evidence admitted for another purpose, and wholly inadmissible as against Milligan, to wit, the evidence of Miller and Osborn, tending to show declarations of Fiero to them that *Milligan was the complainant.* However pertinent these might be to contradict Fiero, who swore that he had not made them, they were of no force whatever against Milligan.

It is therefore upon the flimsy evidence of Fairchild, susceptible of an entirely different and innocent construction, that the claim is made that it *must* carry the cause to the jury. I am clear, that it would not support a verdict, even if uncontradicted by three respectable men ; and that therefore the plaintiff was rightfully nonsuited, because he had not shown that the defendant had *prosecuted* him.

2. But I think the plaintiff failed on another point equally fatal to his case, to wit, in showing that there was a lack of *probable cause* for the prosecution. I am not quite satisfied with the definition of *probable cause,* contained in *Munns* v. *Nemour,* (3 *Wash. C. C.* 37,) and only quoted (not necessarily approved) in *Foshay* v. *Ferguson,* (2 *Denio,* 619,) to wit, " a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a *cautious* man in the belief that the person accused is guilty of the offense with which he is charged." If by cautious man is meant one of *ordinary* caution or prudence, the definition is well enough, but if it means any thing more, I dissent from it. But in

Miller *v.* Milligan.

whatever aspect the case may be viewed, or whatever shape the definition may assume, I regard the undisputed facts as wholly insufficient to support the allegation of want of probable cause. Some of the facts are disputed. They may be laid out of view. Taking the undisputed facts, they present this case : a deserter from the U. S. service being in the custody of the defendant at the plaintiff's hotel, in Windham, escapes therefrom. It is charged that this was done with the connivance of the plaintiff. The deserter is seated in the bar room of the plaintiff's hotel, in which the plaintiff and others are seated ; the deserter takes a seat by the side of the plaintiff, and enters into conversation with him ; the plaintiff makes a motion or gesture with his arm, which might be construed as being directed towards the open door in the rear of the bar room. The plaintiff passes through that door himself, leaving it open. The deserter soon after follows, passing into the wash room—thence into the rear hall, and makes his escape through the back door. These are undisputed facts. Other facts, on which the complaint is also based, are those to which the defendant testified, that the plaintiff spoke to the deserter in opposition to the service—of the folly of going back into the army, and his advice not to do it, and other language of a similar tenor, also using other expressions importing political sympathy and the presence of friends in the bar room. Some two weeks after this, the deserter was rearrested by the defendant, and informed him that Miller advised, connived at and assisted in his escape, and had told him the doors would be left open for that purpose, and no noise made about it. This story is repeated to the board, when he arrived in Kingston, and was confirmed by the deserter's affidavit. On these statements the defendant says he relied, and believed them true. Can it be said that these facts—*which were then as yet wholly uncontradicted*—did not furnish *probable cause* for suspecting Miller of enticing away the deserter or conniving at his escape ? For myself, I cannot see how the contrary can be maintained. The *belief* of the defendant in the

Miller *v.* Milligan.

truth of these facts (unless wholly incredible) would go far to sustain the existence of probable cause ; for he speaks *in part* of what he *actually knew*, and in *other respects* upon *information* corroborating facts known to himself. (*Foshay* v. *Ferguson*, 2 *Denio*, 620. *Seibert* v. *Price*, 5 *Watts & Sergeant*, 438.) The *information* received strongly supports the allegation of probable cause, and tallies with all the facts, and these two combined are sufficient to sustain the defense. (*Foshay* v. *Ferguson*, 2 *Denio*, 620.) The facts conceded by all—the actual and sudden escape—the open doors—the previous conversation in a low tone of voice with the plaintiff— the gesture directed toward the door—the retreat of the plaintiff in that direction—the quick escape of the deserter in the same direction—are of themselves pregnant with suspicion. It is no answer to say the deserter was a desperado, and his testimony and assertions alike unreliable. Evidence of this description is common in judicial proceedings—is frequently true and *often safely relied on* when confirmed from other sources. It is no answer to say that Miller was acquitted, notwithstanding the testimony of Shears, and the character of the latter, at the trial in the United States court, conceded to be susceptible of impeachment. It was necessary to show Miller's acquittal, to lay a foundation for the action. He could not proceed a step without it. (*McCormick* v. *Sisson*, 7 *Cowen*, 715. *Gorton* v. *De Angelis*, 6 *Wend*. 418.) This acquittal was not procured without effort. The trial occupied six hours. Two witnesses were sworn for the prosecution. *Five* were *sworn* for the *defense ;* the case was *summed up* on both sides ; a charge given by the court ; the jury *retired* under charge of a qualified officer, and afterwards returned into court and delivered their verdict. Circumstances less strong than those just mentioned which occurred on that trial have been held sufficient to repel the allegation of want of probable cause. (*Burlingame* v. *Burlingame*, 8 *Cowen*, 142.) In the last case cited, Judge Nelson (now of the U. S. Supreme Court) held at the circuit that calling witnesses and

Miller *v.* Milligan.

going fully into the defense was *an admission of probable cause,* and while the court *in bank* did not pass distinctly and *specifically* on that question, they held that the count for malicious prosecution could not be sustained. They say, " There is no sufficient reason for not believing that he [the defendant] was not persuaded of the truth of the facts related by him under oath ; and though the plaintiff was acquitted, it is possible the defendant may have been correct ; *at any rate his statement may be considered as probable cause."* The alleged malicious prosecution was of an aggravated character, charging the plaintiff with the crime against nature, and so far as we can perceive, supporting it only by his own oath. And, yet, probable cause was held to be proved.

Some stress is laid in argument upon the fact that the defendant in his affidavit stating the transaction does not profess to found the charge or his belief of the plaintiff's guilt in part or at all upon *information* obtained from Shears. But it was not necessary to make that reference. Shears' affidavit was *cotemporaneously* taken, and both were used together, and not either alone, as the foundation of the criminal prosecution.

Stress is also laid upon the fact that three or four witnesses, besides the plaintiff, contradicted the defendant on the trial, in regard to material portions of his affidavit which was laid before the grand jury. The answer to this is, I think, *twofold.* (1.) Assuming this contradiction to exist, there are nevertheless abundant facts remaining to repel the imputation of want of probable cause. (2.) The contradiction, except in the case of the plaintiff himself, is rather *apparent* than real. Milligan swears to certain facts ; for example, that Miller said Shears was a d—d fool to go back into the army and fight for Abe Lincoln and his nigger war, and he would not do it, and that he was a democrat and Shears had a plenty of friends there. It must be conceded that Miller denies these statements, in an unqualified manner ; but as to the other witnesses their testimony is liable to

this criticism. (1.) Rider does not *expressly* appear to have been there the whole time; and it is *obvious* that Miller and Shears may have had a conversation which he *did not hear* or *observe*. This remark is applicable to the other witnesses, Peck and Johnson, both of whom expressly qualify their contradiction by the expression *so far as they saw or heard.* Peck left the bar room ten or fifteen minutes *before* the escape; and Johnson found the parties there when he got there. It was therefore *possible* for every thing which Milligan said to be true without contradicting any of the witnesses except the plaintiff himself.

This, so far as I know, is the whole evidence upon which the allegation of a want of probable cause rests. I think it would be unsafe as a matter of practice, and inconsistent with the theory upon which this action is based, to allow a recovery in a case of this description. The defendant has, I think, shown probable cause for the prosecution if he is its author; and the plaintiff (which is the real question) has not shown the want of probable cause for the charge. On both of the grounds, the absence of proof to show that the defendant was the *real prosecutor,* and if so, that he was without evidence or circumstances justifying a *reasonable suspicion* of the truth of the charge; I am of opinion that the plaintiff was properly nonsuited, and had no legal right to ask a submission of the facts to the jury.

On the other ingredient which enters as a component part into this cause of action, that of *malice,* I have not thought it necessary to dwell. *Perhaps* there is evidence justifying the submission of that question to the jury, whether or not it would be sufficient to carry a verdict. There is *more* evidence on that point, I think, than on the others; but as the action requires each and all of the three *supports* before named, in order to *stand,* and lacks two of them, I think it must *fall.*

The evidence of Shears' declarations to Milligan on and after his re-arrest, tending to show the truth of the *charge*

Miller *v.* Milligan.

(if any) which constituted the foundation of the alleged malicious prosecution, was properly received. They were eminently calculated, if believed, to raise a strong suspicion of the crime (that of enticing away a deserter) with which Miller was charged, and it is just precisely this kind of evidence (to wit, *information* of the facts,) which often tends most strongly to repel the charge of want of probable cause. (*Foshay* v. *Ferguson*, 2 *Denio*, 617.)

Nor was the objection to the admission of evidence of the U. S. District Attorney's *declarations* that Shears' character was notoriously bad, and that he would not hang a dog on his evidence, erroneously overruled. The district attorney could not by his declaration make or unmake a character for Shears ; especially to affect Milligan thereby. So far as the evidence could possibly be regarded as pertinent (if at all) it was allowed to be introduced to show the *act* of the district attorney as a proceeding on the trial dispensing with proof of impeachment of the character of Shears.

I think no legal error was committed at the circuit, and that a new trial should be denied, and the defendant have judgment.

MILLER, J. As there is a difference of opinion among my brethren upon the questions arising in this case, I purpose to examine briefly the points of disagreement between them.

The first question which arises is, whether the defendant instigated the prosecution against the plaintiff. The main testimony, I think, to sustain this view of the case is the evidence of the witness Fairchild. According to his testimony, the defendant stated to him that he had assisted the plaintiff, which would not alone imply that he had orginated the prosecution, because the arrest may have been made at the instigation of others, and in the discharge of an official duty. But he went a little further, and said that he would make it cost him a nice pile before he got through, and he would learn him not to get another deserter off. In this last

remark, the defendant spoke as if *he* personally had the control of the matter; of what *he* could do in putting the defendant to expense, and what *he* would learn him. All this would seem to convey an idea· that *he* was the author, originator and the controlling spirit of the prosecution. All the evidence but this is, I think, sufficiently explained. It is shown, quite clearly, that he acted under direction of the board of enrolment in drawing the papers, and that so far as the trial of the plaintiff, and any thing connected with it, is concerned, it was conducted by other parties, and the defendant occupied entirely a secondary position, and, as he expressed himself to one of the witnesses, he was only a passenger.

The evidence to contradict Fiero only bears upon the weight to be given to his evidence, and cannot be considered as controlling.

Laying aside, then, the other testimony, we are driven to consider the evidence of Fairchild as bearing upon the question now under consideration. It is not to be denied that he does not present himself in a very advantageous light, as it appears that he had several times enlisted, and been discharged for physical defects not apparent to others, but known to himself, and which he must have concealed before he could have passed inspection, and been admitted into the service. This, however, is a matter which affects his credibility and the weight which should be given to his testimony. As it stands, I am not prepared to say that it is so glaringly inconsistent with the truth, and palpably false and untrue, that we are at liberty to disregard it for that reason. The most that can be claimed, I think, is, that this was a question for the consideration of the jury. It was mere evidence at least, and its strength and weight should be determined by the jury, and not by the court. So long as there was any evidence whatever, however slight it might be, the court was not authorized to nonsuit and take the case from the jury.

As there was some evidence, then, upon this point, I think the plaintiff did not fail in establishing this branch of his case.

Miller *v.* Milligan.

The next question which arises is, whether there was probable cause for the prosecution. The authorities are very explicit as to what constitutes probable cause. It is defined to be a reasonable ground of suspicion supported by circumstances sufficiently strong to warrant a belief of guilt. (*Foshay* v. *Ferguson*, 2 *Denio*, 619.) It does not depend upon the actual guilt or innocence of the accused, but upon the *belief* of the prosecution concerning such guilt or innocence. (*Seibert* v. *Price*, 5 *Watts & Sergeant*, 438.) The plaintiff must establish that there is no color for the charge. (2 *Sand. on Pl. and Ev.* 663.) The real question, then, is, whether the defendant had reasonable ground to believe that the plaintiff was guilty of the charge made against him. His belief may be founded upon facts within the knowledge of the party, or upon information derived from other persons.

In reference to the facts presented upon the trial, it cannot be denied that the testimony as to most, if not all, of them, is conflicting and contradictory. The plaintiff swears quite positively to a history of the transaction which occurred at the time of Shear's escape, which establishes that he was entirely innocent of the charge made against him. He is supported in his statement by the testimony of several witnesses. The defendant contradicts the plaintiff, and the statement of his witnesses in every material part. There is a direct conflict which cannot well be reconciled, and in such a case the question arising as to whether there was probable cause, must go to the jury. (*Besson* v. *Southard*, 6 *Seld.* 240.) In the light in which I view the undisputed facts, they establish that Shears was a deserter, and that he was arrested by the defendant, and taken to the plaintiff's public house. He was in the bar room of the plaintiff's hotel, where a number of persons, including the plaintiff, were present. He took a seat by the side of the plaintiff, and a brief conversation took place between them. So far all the witnesses agree, and the facts are not controverted. But here the conflict in the testimony commences. According to the plaintiff's

evidence, nothing else occurred which indicated his complicity with the abrupt flight of Shears. If the defendant is to be believed, and Shears, not only considerable conversation took place, but the plaintiff directly aided Shears in escaping.

Among other facts, the defendant swears that the plaintiff made a motion with his hand towards the door of the room out of which the deserter escaped, as if to indicate that he could leave in that direction. The plaintiff distinctly denies this very important fact, which might well be considered, if true, as warranting a belief that the plaintiff was engaged in assisting Shears in getting out of the custody of the officer. And I understand the plaintiff's witnesses corroborate his statement. The plaintiff having positively denied the defendant's statement in this respect, I do not well see how it can be considered as an undisputed fact ; and I think as the evidence stood, upon that point, it was a fair question for the jury to determine whether any such occurrence had ever transpired. If the plaintiff had previously passed through the same door, as is claimed, leaving it open, in the absence of any act of his, confessedly proven, that circumstance was of but little consequence. It would not establish his guilt or connivance in the deserter's escape, or furnish a reasonable ground of suspicion.

If we consider, then, the facts which were not contradicted, they do not, in my opinion, establish a state of facts which would authorize a *belief* that the plaintiff was guilty. He was in his own house, where he had a perfect right to be.

The fact that the deserter conversed with the plaintiff, as he did with others present upon that occasion, would not furnish a reasonable ground of suspicion, or authorize any action on the part of the defendant, against the plaintiff. So far as the undisputed facts show the acts and conduct of the plaintiff at the time in question, they were not of a character to warrant a belief of guilt, or to authorize the plaintiff's arrest ; and the defendant cannot sustain his defense upon any such basis.

Miller *v.* Milligan.

As to information derived from another party, which authorized a belief on the part of the defendant that the plaintiff was guilty of aiding in the escape of Shears, the testimony shows that Shears, when subsequently arrested, stated to the defendant to the effect and in substance, that the plaintiff had encouraged and aided and abetted his escape. He ratified and confirmed this statement by an affidavit, and also testified to it when sworn as a witness upon the trial of the plaintiff on the indictment against him in the United States Court.

This information, with the circumstances surrounding and connected with the escape of Shears, if believed and acted upon by the defendants, would no doubt justify the arrest. The affidavit of Shears furnished positive proof of the fact. The defendant swears that he believed the truth of his statement, and if he proceeded against the plaintiff upon that proof, and under a belief in its truthfulness, then he had probable cause for so doing.

The inquiry suggested itself, whether it can be said that he did not thus proceed, because he testifies to knowledge of the plaintiff's acts, which is contradicted by other proof? Conceding that his statement as to what he actually witnessed himself is contradicted, the information which he received from Shears under oath still remains, which alone would have justified the action of the defendant. I do not well see how this can be stricken out of the case, and that we are bound to assume that because the defendant may have made a mistake in his evidence, and his testimony is contradicted as to what he actually saw and heard, he is for that reason to be deprived of the benefit of the information thus communicated to him.

It certainly would be going very far to say that because Shears was a desperate character, for that reason the affidavit which he made must have been procured by the defendant unfairly and for the very purpose of instituting this prosecution.

Miller *v.* Milligan.

In the absence of any direct evidence that such was the case, I am inclined to think that the information communicated by Shears to the defendant furnished a reasonable ground for a belief that the plaintiff was guilty, and probable cause for this prosecution.

I am not aware of any rule by which the statement made by Shears can be considered as balanced, outweighed or rendered of no effect because the statement of the defendant may have been impaired by other testimony.

It is sufficient, I think, that there was such information furnished to the defendant, which, of itself, would authorize and justify his action. And its force, strength and efficacy are not diminished because evidence is introduced to show probable cause for his action upon other and different grounds.

While either would have been sufficient, a failure to establish one does not necessarily destroy the effect of the other.

Whatever may be the circumstances of aggravation attending a case of this character, and however unjust the accusation towards an innocent person, the rules of law which apply connot be disregarded. And as it is clear that the information communicated was enough to justify a belief of the guilt of the plaintiff, and furnished probable cause for his arrest, the nonsuit was properly granted at the circuit.

As the plaintiff failed to establish one of the most essential ingredients of this cause of action—a want of probable cause— it is not necessary to discuss the question whether there was evidence of malice.

I discover no error in the admission of evidence upon the trial, and I think a new trial must be denied, with costs.

New trial denied.

[ALBANY GENERAL TERM, March 5, 1866. *Miller, Ingalls* and *Hogeboom,* Justices.]