OSCAR B. HEYNE, Appellant, *v.* CHARLES C. BLAIR, Respondent.

62 19
116 338
116 348

Although, in an action for malicious prosecution, the burden is upon plaintiff to prove a want of probable cause for the prosecution, and although the evidence be uncontradicted, yet, if the facts proved are capable of different inferences it is for a jury to determine what, under the circumstances, would be the belief and action of men of ordinary prudence, and a refusal to submit the case to the jury is error; this class of actions forms no exception to the general rule.

Plaintiff was arrested upon the complaint of defendant, charging him with forging the signature of A. as indorser of a promissory note. The signature was in fact genuine, and no appearance of wrong on the part of plaintiff was proved. Defendant acted upon an apparent discrepancy between the signature and other signatures of A., an opinion expressed by a teller of the bank at which A. transacted his business, that it did not look like A.'s signature, and a statement casually made without knowledge of the purpose of the inquiry by A. to the teller, communicated by the latter to defendant, that A. had only indorsed one note of the amount of the one in question, when in fact defendant held two such notes. It appeared also that A. had, to defendant's knowledge, indorsed many notes for plaintiff. The court directed a verdict for defendant. *Held* (MILLER and FOLGER, JJ., dissenting), error; that the evidence was not of that conclusive character justifying a withdrawal of it from the jury; but it was for them to determine the effect all the information and knowledge in defendant's possession would have had upon the mind of a person of ordinary prudence and caution acting conscientiously.

*Heyne* v. *Blair* (3 N. Y. S. C. [T & C.], 263) reversed.

(Argued April 21, 1875; decided April 30, 1875.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, in favor of defendant, entered upon an order denying a motion for a new trial and directing judgment upon a verdict. (Reported below, 3 N. Y. S. C. [T. & C.], 263.)

This action was for malicious prosecution. In 1872 defendant discounted for plaintiff two promissory notes each for $300, indorsed by H. Ackerman. Ackerman, to defendant's knowledge, had frequently indorsed for plaintiff and defendant had discounted a number of such notes. In January, 1873, defendant made a complaint against plaintiff before a police justice of the city of Syracuse, charging plaintiff with forging Ackerman's signature as indorser of one of the notes, he stating that he was so advised by a cashier of the Merchants' Bank where Ackerman did business. Upon this complaint a warrant was issued; plaintiff was arrested; committed over night, and the next morning, upon being brought before the justice, was discharged without examination; Ackerman having pronounced the signature genuine.

The defendant testified that his attention was called to a difference in Ackerman's signature upon the two notes the day before the arrest; that he wrote a letter to Ackerman in time to be delivered the next morning, requesting him to come and see defendant at once. He then took the two notes . to the Merchants' Bank and showed them to the cashier, and asked him what he thought of the signatures. He replied that one did not look right; that if it was on a check he should hesitate about paying it; that he then looked for Ackerman in the streets, and returning to the bank told the teller the first time Ackerman came in to ask him how much paper he was on for plaintiff; that some two or three hours thereafter the teller sent him a note, stating that Ackerman was only on one $300 and one $150 note; that he then went to the bank and the teller told him Ackerman said he was only on one $300 note, and upon this evidence he swore out the warrant.

Mr. Plumb, the cashier, testified that defendant showed him the two notes; that he compared Ackerman's signature upon them with other signatures of his, and then he told defendant that one of them did not look exactly like Ackerman's signature; if he wrote it he wrote it with a different pen from what he had been in the habit of writing with; that

he might have written it with a bad pen; witness told defendant that Ackerman was on the grand jury and would probably be in the bank that day; defendant wished witness to ask Ackerman how much paper he was indorser upon for plaintiff, which he promised to do; that Ackerman came in after dinner and he asked him the question; Ackerman replied he was on a $300 and $150 note; that was all; Ackerman wanted to know why he asked the question, but witness declined to tell; witness then sent the note to defendant as testified to by him.

Plaintiff's counsel asked to go to the jury upon the question of probable cause. The court held that as the evidence was substantially undisputed the question was one of law for the court, and directed a verdict for defendant. To which plaintiff's counsel duly excepted. Exceptions were ordered to be heard at first instance at General Term.

*Chas. B. Sedgwick* for the appellant. The court erred in directing a nonsuit. (*Hall* v. *Suydam*, 6 Barb., 33; *Besson* v. *Southard*, 10 N. Y., 240; *Carl* v. *Ayers*, 53 id., 14.) Defendant's good faith, without reasonable cause for making the charge, is not sufficient to protect him from liability. (*Foshay* v. *Ferguson*, 2 Den., 619; *Muuns* v. *Memours*, 3 Wash., 37; *Bacon* v. *Town*, 4 Cush., 218.)

*W. H. Gifford* for the respondent. The court properly held that the question of probable cause was to be determined by the court. (*Bulkley* v. *Keteltas*, 6 N. Y., 384, 387; *Baron* v. *Mason*, 31 Vt., 197.) Plaintiff, in order to recover, was obliged to prove both malice and want of probable cause. (*Miller* v. *Mulligan*, 48 Barb., 30; *Besson* v. *Southard*, 10 N. Y., 236; *Carl* v. *Ayers*, 53 id., 14, 17.)

*Per Curiam.* The counsel for the defendant is entirely right in his position that the *onus* was upon the plaintiff to prove both the want of probable cause for the prosecution instituted against him, and malice on the part of the defend-

ant. If he failed to prove either of these facts, the action necessarily failed. (*Besson* v. *Southard*, 6 Seld., 236; *Foshay* v. *Ferguson*, 2 Denio, 617.) Proof of malice will not excuse or supply the want of proof of want of probable cause, neither can the want of probable cause be inferred from proof of malice, although malice may be inferred from the want of probable cause. (*Sutton* v. *Johnstone*, 1 T. R., 493, 544, 545; *Wheeler* v. *Nesbitt*, 24 How. [U. S.], 544.) The fact that there was evidence tending to show actual malice on the part of the defendant did not call for the submission of that or of any question to the jury if there was a total failure to prove the want of probable cause. Notwithstanding the actual innocence of the plaintiff of the offence charged, and the fact that the prosecution may have been instituted from malicious or other unworthy motives, and that the plaintiff sustained injury in his person and reputation, he was remediless if the defendant had just reason to believe, upon facts and circumstances within his knowledge, that he had committed the crime charged upon him. Probable cause, as defined in the books, is such a state of facts and circumstances as would lead a man of ordinary caution and prudence, acting conscientiously, impartially, reasonably and without prejudice upon the facts within his knowledge, to believe that the person accused is guilty. (*Bacon* v. *Towne*, 4 Cush., 217; *Carl* v. *Ayers*, 53 N. Y., 14; *McGurn* v. *Brackett*, 33 Me., 331.) The question of probable cause, when there is no conflict in the evidence, no disputed facts, nor any doubt upon the evidence, or the inferences to be drawn from it, is one of law for the court and not of fact for the jury. It is said in *Besson* v. *Southard* (*supra*), that if the facts which are adduced as proof of want of probable cause are controverted, if conflicting testimony is to be weighed, or if the credibility of witnesses is to be passed upon, the question of probable cause should go to the jury with proper instructions as to the law. In such cases it is a mixed question of law and fact. The rule laid down in *Masten* v. *Deyo* (2 Wend., 424), is expressly approved by JEWETT, J., in that case. In *Masten* v. *Deyo*, MARCY, J.,

after a review of the authorities, says: " Where the circumstances relied on as evidence of probable cause are admitted by the pleadings, it belongs to the court to pronounce upon them; and where these circumstances are clearly established by uncontroverted testimony, or by the concession of the parties, and they fully establish a probable cause, the court may refuse to submit the cause to the jury and order the plaintiff to be nonsuited." This rule adhered to will prevent a confounding of the duties of courts and of juries in actions of this character. The same principle was recognized in *Carl* v. *Ayers* (*supra*). It is pre-eminently a question for the judgment of twelve men to determine what, upon a doubtful state of facts, or upon facts from which different men would draw different conclusions — that is, upon facts capable of different inferences — would be the belief and action of men of ordinary caution and prudence. Such is the rule in all questions of the like character, and there is no reason why this class of action should form an exception to the rule. It is not the province of this court to pass upon the weight of evidence in the case before us, or determine whether submitted to the jury with proper instructions they should have found the want of probable cause. We think there was a fair question for the jury, and they must pass upon it uninfluenced by any intimation from us. It is enough to say that the evidence did not conclusively establish a probable cause, and the evidence tended to show the want of such cause. It should be borne in mind that no act or declaration of the plaintiff was suspicious or relied upon as giving color to the suspicion of wrong on his part. Neither was any act or declaration of others of which he had cognizance relied upon as justifying the prosecution. He was confessedly innocent not only of all wrong, but of every appearance of wrong, and in this respect the case differs from most of those found in the reports. The only circumstances relied upon were a supposed discrepancy in appearance between the indorsement, alleged to have been forged, and other signatures of the same party, and the opinion or impression of the teller of

the bank at which the indorser transacted business, as testified to by him, that it did not look exactly like Ackerman's signature; that if he wrote it, he wrote it with a different pen from what he had been in the habit of writing with, and that he might have written it with a bad pen; and the statement of Ackerman, made to the same witness and communicated to the defendant, casually made and without any knowledge of the purpose of inquiry, that he had only indorsed one $300 note for the plaintiff, when, in fact, the defendant held two such notes. Ackerman had, to the knowledge of the defendant, indorsed many notes for the plaintiff. The defendant states the declarations of the teller in respect to the signature more strongly in his favor, and so far as there was any discrepancy in the testimony, it was for the jury to determine which spoke the truth, as it was also for them to determine the effect which all the information and knowledge in the defendant's possession would have had upon the mind of a man of ordinary prudence and caution, acting conscientiously, that is, the belief which the defendant might have honestly entertained from these and all the other circumstances of the case. The evidence was not of that decisive and conclusive character that justified the court in taking the case from the jury.

The judgment must be reversed and a new trial granted.

MILLER, J. (dissenting). For the purpose of maintaining this action, the plaintiff was bound to show a want of probable cause. The evidence on this subject was: First. That the signatures of Ackerman, the indorser, upon the two notes which defendant held against the plaintiff were unlike each other, and unlike other signatures of Ackerman, and that upon discovering the difference in Ackerman's signature, the defendant immediately wrote to Ackerman, requesting him to call and see him, mailed the letter in time for him to receive it and come in the next morning and see the defendant. Second. That not hearing from Ackerman the next day, the defendant went to the bank where the indorser did his business, showed

the indorsement to the cashier, who expressed an opinion that one of the signatures did not look like Ackerman's, and if he wrote it, he wrote with a different pen than that he had been in the habit of writing with, and that it was heavier than the other. Third. That the teller of the same bank, upon being shown this indorsement, said to the defendant, that if such a signature was on a check he would hesitate about paying it. Fourth. That the defendant then looked for Ackerman, and could not find him, and the cashier, at the request of the defendant, inquired of Ackerman, the indorser, how many notes he had indorsed for the plaintiff, and reported to the defendant that Ackerman said to him that he was on two — one for $300 and for $150 — while the plaintiff had two notes of $300 with Ackerman's apparent indorsement. Ackerman also said, at another time to the cashier, which was reported to the defendant, that he was indorser on only one $300 note. From these facts, it would appear that the defendant had strong reason to believe that the plaintiff had committed the crime of forgery. His suspicions had been aroused from the appearance of the signatures on the notes, and he then instituted inquiries from the proper and most direct sources, and found that the opinion he had entertained was sustained by those who were competent to form an accurate judgment, and by the statement and declaration of Ackerman himself made to the cashier as to the number of notes he had indorsed. If this information was correct, then most manifestly the defendant held one note of $300 which Ackerman had never indorsed; and, in connection with the other circumstances referred to, he had probable cause to believe that the plaintiff had committed a forgery. In the prosecution of criminals some latitude must necessarily be allowed to a complainant who makes a charge against a party, with reasonable grounds to believe that such party has been guilty of a criminal offence, and the law does not hold a person thus acting responsible for damages because it turns out that he has made a mistake, and the charge made is not sustained. Probable cause is defined to be a reasonable suspicion, supported by circumstances suffi-

Dissenting opinion, per MILLER, J.

cient to warrant a cautious man in the belief that the person accused is guilty of the offence charged. And it was enough for the defendant to show that he had reasonable ground to believe that the plaintiff was guilty at the time the charge was made. (*Farnam* v. *Feeley*, 56 N. Y., 451, 456 ; 2 Denio, 617; *Miller* v. *Mulligan*, 48 Barb., 30.) Probable cause does not depend upon the guilt or innocence of the accused, but a belief of the prosecutor concerning such guilt or innocence. (*Miller* v. *Mulligan, supra ; Seibert* v. *Price*, 5 Watts & Seargent, 438.) These familiar rules are mainly reiterated in *Carl* v. *Ayers* (53 N. Y., 14), and it is there said, that "public policy requires that a person shall be protected, who, in good faith and upon reasonable grounds, causes an arrest upon a criminal charge, and the law will not subject him to liability therefor." It is also said, that a groundless suspicion is not enough, which is unwarranted by the acts of the accused or the facts known to the accused. It is, however, well settled that either the acts of the accused or facts known to the prosecutor will justify a criminal charge, provided they are brought within the rules laid down. While there are hardships accompanying an enforcement of the established rules referred to, which are the result of the wisdom and experience of the past, and innocent persons are sometimes accused and placed in positions which are calculated to awaken a keen sense of injury and injustice, the public welfare, and the protection of society from the inroads of criminals, demand that a certain degree of security should be insured to those who, upon reasonable grounds, place themselves in the attitude of prosecutors against wrong-doers.

In view of the evidence in this case, which is uncontradicted, I cannot resist the conclusion that the defendant had sufficient facts within his knowledge, and information which he had received, to prefer the charge alleged, and that he acted with probable cause to believe that the plaintiff had committed the crime charged. The question of malice is not important to discuss, as even if it existed, and there was probable cause, the defendant was justified. As the case stood upon

the evidence, there was nothing for the jury to pass upon, and the judge properly directed a verdict for the defendant.

The judgment must be affirmed, with costs.

All concur for reversal; except MILLER and FOLGER, JJ., dissenting.

FOLGER, J., concurs with MILLER, J., in result.

Judgment reversed.