### BROUNSTEIN *v.* WILE *et al.*

*(Supreme Court, General Term, Fourth Department.* September, 1892.)

**1. MALICIOUS PROSECUTION—OF CIVIL ACTION—PROBABLE CAUSE.**
    Defendants were sued for malicious prosecution, in having replevied for fraud goods sold by them to plaintiff. Nothing occurred at the time of sale to show that plaintiff intended to fail, and later he returned some of the goods, and paid money due on prior purchases. Defendants asked payment for the last purchase before it was due, and when plaintiff refused, stating that he had other debts to pay, they asked him for a financial statement, which he also refused. Defendants testified that in asking for the statement they said that he had bought more goods than usual, that they had received many inquiries about him, and that they wanted to be satisfied of his responsibility; and they testified that at this time he had in his store goods worth only $3,000, not enough to pay his debts. Plaintiff testified that no reason was given for asking a statement, and that the goods in his store were worth $9,000. Defendants were not informed of plaintiff's having secreted goods, or of his insolvency. *Held*, that there was evidence from which the jury might find malice and want of probable cause, and that it was error to grant a nonsuit. HARDIN, P. J., dissenting.

**2. SAME—INFERENCE OF MALICE.**
    Malice may be inferred from the want of probable cause.

Appeal from circuit court, Onondaga county.

Action by Marcus Brounstein against Julius M. Wile and others for malicious prosecution. From a judgment dismissing the complaint entered on a nonsuit, plaintiff appeals. Reversed.

In the fall of 1882 the plaintiff purchased of the defendants goods to the amount of about $1,000. On the 30th November, 1882, the defendants commenced in the supreme court, against the present plaintiff, a replevin action

for the recovery of the goods, upon the theory that the circumstances of the purchase were such that they had the right to rescind it as fraudulent. A portion of the goods were replevied at the commencement of the action. Issue was joined in that action, and upon the trial there was a verdict in favor of the defendant therein, and judgment was entered accordingly. Thereupon the present action was commenced.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

*Louis Marshall*, for appellant.   *William F. Cogswell*, for respondents.

MERWIN, J.   The grounds, in substance, upon which the defendants claimed to have probable cause, were that plaintiff had given them a larger order that fall than ever before; that his clerk had ordered of them a quantity of goods at an extravagant price, and on the same day had ordered of three other parties in Rochester goods to the amount, in the aggregate, of about $1,000; that a good many inquiries had been made of them as to the financial condition of plaintiff,—a thing that had never occurred before; that at the store of the plaintiff, just before the replevin suit was commenced, the plaintiff refused to give to Mr. Wile, one of the defendants, a statement of his financial condition; and that the amount of goods at the store was about $3,000, which Mr. Wile considered a small amount, and not enough to pay the plaintiff's debts.   The purchase from the defendants by the clerk of the plaintiff is denied by the clerk, and no goods were delivered.   This circumstance must therefore be thrown out of view in determining the propriety of the nonsuit. It appeared from the defendants' books that the plaintiff, in the fall of 1881, ordered nearly the same amount of goods, and in the fall of 1880 had ordered more; so that little or no force could be fairly given to the size of the order. Aside, then, from what occurred or was observed at the store, there were the other purchases at Rochester, and the inquiries made of the defendants.   The defendants knew that plaintiff had purchased from other people in Rochester before, and that it was customary in the trade to make inquiries of other merchants in regard to dealers.   Mr. Wile, who acted for the defendants, testifies that he never inquired what the stock of plaintiff usually was, and had no information that he had secreted any goods, and made no inquiry on the subject.   It is not suggested that he was informed by any one that plaintiff was insolvent.   He testifies there was nothing that would indicate to his mind that plaintiff intended to fail in August when he bought the goods.   It appears from defendants' account that after the purchase in August plaintiff returned the goods purchased to the amount of $133, and he made payments to defendants to the amount of $833.27, including a payment of $37.27 on November 29th, the day before the replevin suit was commenced.   These payments left nothing due the defendants on account prior to the August purchase.   It seems to be very clear that the fact that plaintiff's clerk bought of other parties goods to the amount of $1,000, and that other parties made inquiries of defendants as to plaintiff's responsibility, furnished in themselves, and in view of the other conceded facts, no ground for defendants' believing or suspecting that plaintiff intended to commit a fraud in his purchase in August.   The main question, however, relates to what occurred or was observed at the store.   Upon this there is a conflict in the evidence.   The defendants give evidence tending to show that the goods at the store were of the value of only about $3,000, while evidence on the part of plaintiff is given tending to show that they were worth $9,000.   None of the debt to defendants was then due.   Wile, however, asked the plaintiff for a payment, saying that his firm needed the money.   Plaintiff declined to make any payment, saying, in substance, that he wanted to use what money he then had to pay debts that were due, and that he would pay the defendants when their debt was due.   Wile then asked for a statement, and, as he testifies, stated as reasons therefor that plaintiff had bought more goods than usual; that many inquiries had been made

about him; that his clerk had ordered goods at improper prices; and that he (Wile) wanted to be satisfied that plaintiff was good and responsible. The plaintiff, however, testifies that Wile gave no such reason for wanting a statement, and he is corroborated by one or more other witnesses. It is conceded that plaintiff refused to give a statement. Wile concedes that the reason he gave for wanting a payment was not true. Plaintiff testifies that Wile "sneered at me, and said I wouldn't be in existence two days in business in Skaneateles. That he was going to bust me in some kind of shape." A son of the plaintiff testifies to Wile saying, "We will bust him." These declarations Wile, in his testimony, denied. Whether or not the refusal by plaintiff to give a statement was reasonable, under the circumstances, was, upon the evidence, a question of fact. If it was reasonable, and the goods then in the store were of the value testified on the part of plaintiff, and the purchase of the defendants by the clerk of plaintiff, as claimed by defendants, was never in fact made, all of which the jury might have found, it would not have been proper to hold as matter of law that the plaintiff failed to establish want of probable cause. I think it was, in this case, a jury question. *Heyne* v. *Blair*, 62 N. Y. 19. In *Burhans* v. *Sanford*, 19 Wend. 417, it is said that malice may be, and usually is, inferred in these actions from the want of probable cause. A like doctrine is asserted in many other cases. In the present case the question of malice was, I think, for the jury to pass upon. The defendants claimed the benefit of the advice of counsel, but it was a question of fact whether the advice was given in good faith, and upon a full and fair statement of all of defendants' knowledge and information on the subject, and acted upon by them in good faith. In my opinion, the nonsuit was improperly granted, and the judgment should therefore be reversed.

Judgment reversed, and a new trial ordered, with costs to abide the event.

MARTIN, J., concurs. HARDIN, P. J., dissents.

Statement by HARDIN, P. J., dissenting:

Appeal from a judgment entered the 13th of May, 1891, in Onondaga county clerk's office upon and after a nonsuit granted at the circuit in that county, dismissing the complaint upon the merits. On the 30th day of November, 1882, the defendants commenced an action in replevin to recover "quantities of clothing to the amount of $882.50," which they had theretofore sold to the plaintiff, a retail dealer residing in the village of Skaneateles, from their store in the city of Rochester. Before the action was commenced the defendant Wile had an interview with the plaintiff, and in that interview sought to obtain a statement of the financial standing and affairs of the plaintiff. The plaintiff refused to make such a statement, or to make a disclosure of his affairs. Upon the trial of the replevin action at the March circuit in 1886 a verdict was rendered for the defendant in that case, the plaintiff here. This action was commenced May 19, 1887, and in the complaint it is alleged that all the "acts performed by the defendants and by their direction were without any probable cause whatsoever, and were done maliciously, for the purpose of injuring the plaintiff among merchants and in the community in which he he resided, and for the purpose of extorting from him, before the maturity of his obligations, the contract price of the goods purchased by the plaintiff from them." It appears the plaintiff commenced business at Skaneateles in March, 1879, and become a customer of the defendants, then doing a business in the city of Rochester, and made purchases prior to the replevin action amounting to some $6,500, on credit. In the fall of 1882 the plaintiff purchased of the defendants goods to the amount of about $1,015.50. Subsequently $133 in value thereof were returned, so that there remained a balance of $882.50 at the time of the commencement of the replevin action on the 30th of November, 1882. One of the defendants went to the city of Syr-

acuse, and consulted their attorney, Mr. Stern, and in company with him, on the 30th of November, went to the village of Skaneateles, and sought the plaintiff, and, after having an interview with the plaintiff, and reviewing his stock of goods, and holding a conversation with the plaintiff, in which conversation the refusals were made to disclose a statement of his financial affairs and business standing, Mr. Wile communicated such additional facts as he had learned in the course of the interview to Mr. Stern, who thereupon advised the defendants "to commence an action to replevin the goods" which the defendants had sold to the plaintiff. According to the testimony of Mr. Stern, he heard a portion of the interview between the plaintiff and Wile, and thereafter advised the defendant Wile that an action of replevin could be maintained, and thereupon the action was commenced by placing the papers in the hands of the deputy sheriff, who immediately, with the aid of Mr. Stern and Mr. Wile, selected from the plaintiff's stock of goods those which had been obtained from the defendants' firm. At the close of the evidence the defendants' counsel moved for a nonsuit upon several grounds stated, and the court granted an order "directing a nonsuit in the action upon the merits." To that ruling the plaintiff took an exception. The plaintiff then asked to go to the jury upon the whole case. The court refused, and an exception was taken, and thereupon judgment was entered in favor of the defendants, from which this appeal is taken.

HARDIN, P. J., (*dissenting.*) According to well-recognized authorities, the burden was upon the plaintiff to establish by his evidence "a want of probable cause for the prosecution instituted against him, and malice on the part of the defendant." *Heyne* v. *Blair*, 62 N. Y. 19. In *Miller* v. *Milligan*, 48 Barb. 47, the court, in dealing with the rule, used this expression: "The plaintiff must establish that there is no color for the charge." It is equally well established by authority that probable cause does not depend upon the actual state of a case in point of fact, but in the honest and reasonable belief of the party commencing the prosecution upon the facts, circumstances, and appearances within his own knowledge and belief at the time of instituting the prosecution. In *Stewart* v. *Sonneborn*, 98 U. S. 195, it was said: "The conduct of the defendants is to be weighed in view of what appeared to them when they filed their petition in the bankrupt court; not in the light of subsequent appearing facts. Had they reasonable cause for their action when they took it? Not what the actual fact was, but what they had reason to believe it was." That case is also an authority to the effect "that malice alone, if there was such, is insufficient to entitle the plaintiff to recover;" and also that "although the jury may infer malice from the want of probable cause, proof even of express malice will not justify the inference that probable cause did not exist." And in *Hazzard* v. *Flury*, 120 N. Y. 223, 24 N. E. Rep. 194, it was said in the course of the opinion (page 227, 120 N. Y., and page 195, 24 N. E. Rep.:) "Probable cause may be founded upon misinformation as to the facts; not as to the law." In the course of the opinion the judge refers to *Carl* v. *Ayers*, 53 N. Y. 14, approvingly, and takes from the opinion in that case the following: "If the apparent facts are such that a discreet and prudent person would be led to the belief that a crime had been committed by the person charged, he will be justified, though it turns out that he was deceived, and that the party accused was innocent." When the motion for a nonsuit was made and decided there were in the evidence before the court several facts and circumstances relative to the action of the defendants in commencing proceedings in replevin on the 30th of November, 1882, to recover from the plaintiff here the property which had passed to his possession under negotiations for the purchase thereof from the plaintiffs in the replevin action, who are the defendants here. In considering the motion made at the circuit, the trial judge was called upon to determine whether all the facts and circum-

·stances shown by the evidence (*aliunde* conflicting evidence) were such as to induce a belief in the plaintiffs in the replevin action that the proceedings could be maintained upon reasonable grounds, and that they were such as "to warrant a cautious man in his belief that the plaintiffs had a right to maintain replevin." *Anderson* v. *How*, 116 N. Y. 336, 22 N. E. Rep. 695; *Thaule* v. *Krekeler*, 81 N. Y. 428. His conclusion at the circuit was that the plaintiff failed to show a want of probable cause. The plaintiff was in possession of the defendant's goods, which he had received upon a credit. The defendants were informed of facts and circumstances tending to give rise to doubt and suspicion of the plaintiff's ability or intent to pay for the goods. When they sought the plaintiff, and communicated to him their doubts and suspicions, he promptly refused to make a statement of his affairs, or to indicate his financial standing and ability, and to furnish such an explanation as would dissipate the conviction formed that the purposes and intents of the plaintiff were fraudulent, rather than innocent, and not in accordance with the ordinary course of an honest debtor. It does not seem unusual or unreasonable that the defendants should seek to recover their goods with such information as they possessed in respect to the plaintiff, coupled with his absolute refusal to disclose his financial affairs and ability to pay the defendants some $900 for the property which he retained of the purchase from them.

2. After the replevin papers were placed in the hands of the sheriff, and while he was about executing them, the plaintiff sought the service of Mr. George Barrow, an attorney, who resided at Skaneateles, who visited the store while the sheriff was selecting the goods required. to be taken in virtue of the replevin proceedings. When Mr. Barrow reached the store he entered into a conversation with Mr. Stern, who was then acting as attorney for the defendants, and Mr. Barrow states that that conversation "was when they were in the act of taking the goods." The details of that conversation were objected to and apparently excluded on the ground that they were not in the presence of the defendant Wile, and that the conversation was after the action was commenced. The plaintiff took an exception to the ruling excluding the details of that conversation, and calls our attention to *Fagnan* v. *Knox*, 66 N. Y. 525. In that case it was said that if a party "had knowledge of facts which would explain the suspicious appearances, and exonerate plaintiff, he cannot justify the prosecution by putting forth the *prima facie* circumstances, and excluding those thus within his knowledge tending to prove innocence." Inasmuch as the action had been commenced before the conversation ensued between the attorneys, it is not apparent how the conversation between the attorneys could shed any light upon the determination theretofore made by the defendant under the advice of his attorney that there were reasonable grounds upon which to predicate the proceedings for the recovery of the property. In making that determination it is evident the defendant Wile acted upon such information, knowledge, and the conduct of the plaintiff in refusing to make a statement or to disclose the conduct of his affairs prior to the time when the plaintiff sent for and employed Mr. Barrow in his behalf. In the course of the opinion delivered by the trial judge at the time of granting the motion he said: "The question is whether there is an absolute want of facts and circumstances developed by the evidence in this case that strips it entirely of every element of probable cause, so as to charge the defendant in the action with damages. It does not seem to me that the evidence tends to that result; that the most that can be said about the evidence is that the parties, the defendants in this action, predicated their right to a restoration of the goods which were sold in August and delivered in October upon the ground that he got them with intent not to pay for them; and, having obtained the goods, they then discovered certain facts and circumstances from which they concluded that such an intent existed, to wit, that the plaintiff in this action (the defendant in the replevin suit) was buying largely of goods, stocking his store

up, with the intention of not paying debts which he had contracted. It is a matter of no consequence whether there was a good legal ground for entertaining that opinion. The question is, had he a right, upon the undisputed evidence, so far as shown by this case, to entertain an honest idea on his part that he could restore those goods to himself upon that ground? He may have been mistaken. His counsel may have given him improper advice,—advice which could not be sustained in court; but it does not seem to me that it can be asserted with any degree of confidence that there is that absolute want of a right on the part of the plaintiffs in the replevin suit (the defendants here) to bring that action that should charge them in damages, because it failed upon the trial; nor do I see any evidence in this case that justifies or would justify the jury in finding malice in this matter." These comments seem to be justified by the evidence found in the appeal book.

The foregoing views lead me to advise an affirmance of the nonsuit.