Mead E. Griffin, Respondent, v. Fred B. Keeney, Appellant.

*Malicious prosecution — charge as to how far the jury may consider the fact of a settlement between the parties on the question of the defendant's belief that money had been embezzled.*

In an action brought to recover damages for an alleged malicious prosecution, it appeared that the plaintiff and defendant had been engaged in the business of buying and selling hay, each party contributing part of the capital. Whether the parties were partners, or the plaintiff was to be compensated for his services by receiving a certain share of the profits, and whether the plaintiff had authority to draw out of the business such money as he required for his living expenses, were disputed questions.

On a settlement of the business affairs the plaintiff paid over to the defendant in property $1,145 and gave his note for $1,000, which was subsequently put in judgment, and, not being paid, the defendant instituted criminal proceedings against the plaintiff, charging him with the crime of grand larceny.

*Held,* that a charge to the jury that if they found that the relation of copartnership did not exist between the parties, and if the plaintiff, without the authority and consent of the defendant at the time, appropriated moneys furnished him for buying hay to other purposes, that the subsequent act of the defendant in settling as for a debt on an implied contract was a circumstance to be taken into consideration by the jury in determining whether the defendant believed that the money had been embezzled or misappropriated, and a refusal to charge that such settlement would not furnish evidence that the defendant did not so believe were not erroneous.

Appeal by the defendant, Fred B. Keeney, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Allegany on the 19th day of June, 1897, upon the verdict of a jury for $1,000, and also from an order entered in said clerk's office on the 26th day of July, 1897, denying the defendant's motion for a new trial made upon the minutes.

This action was brought to recover damages for malicious prosecution.

*Smith & Dickson,* for the appellant.

*Johnson & Charles,* for the respondent.

Hardin, P. J. :

On the 19th of October, 1896, this action was commenced, and the plaintiff, in his complaint, alleges that on the 12th day of May,

1896, the defendant " maliciously, wrongfully and unlawfully and without any reason or probable cause and maliciously intending to injure the plaintiff in his good reputation, appeared before one H. E. Dudley, at the town of Angelica," a justice of the peace of said town, and charged this plaintiff before said justice with the crime of grand larceny in the first degree, " and with having feloniously stolen one thousand dollars lawful money of the United States from said defendant, and maliciously and without probable cause procured said justice of the peace to grant and issue a criminal warrant for the arrest of this plaintiff upon said charge." It is alleged that a warrant was issued upon the application of this defendant and delivered to a constable, and that the plaintiff was arrested and imprisoned, under said warrant, at the town of Covington, Wyoming county, on the 30th of May, 1896, and taken thence, by the constable, to Angelica, " and there kept and imprisoned under said warrant until the first day of June, 1896," when the plaintiff was taken before the justice and an examination was had upon the charge, and the justice held the plaintiff to answer the same before the grand jury and the plaintiff gave bail. It is alleged that the defendant " caused this plaintiff to be charged before the grand jury of the county of Allegany with the said crime of grand larceny in the first degree; and the grand jury of said county, before the commencement of this action, dismissed the said charge against this plaintiff and acquitted and discharged this plaintiff of the same and said prosecution was fully determined and ended."

The answer of the defendant contained several denials and alleges " that he had good and reasonable cause for said prosecution."

Upon the trial it appeared that the defendant had presented to a justice of the peace an information charging the plaintiff with the crime of grand larceny, in having, about the month of January, 1895, feloniously stolen about the sum of $1,000, the property of the defendant; that the plaintiff was arrested under the warrant issued by the justice May 30, 1896, at Pearl Creek, in the county of Wyoming, about forty miles from the justice's office, on Saturday, and on Saturday and Sunday, May thirtieth and thirty-first, he was taken to Angelica and had his examination, and the justice required him to give bail, and he gave bail, and subsequently the grand jury dismissed the charge.

It appeared by the evidence that in the fall of 1892 the plaintiff and defendant entered into an agreement to carry on the business of buying and selling hay at Cuba and in that vicinity; under that agreement the plaintiff was to put in $450 of the capital for two hay presses and to furnish one horse and buggy and harness to use in the business; that the defendant was to furnish the balance of the capital. The plaintiff was to buy the hay and the defendant was to sell it; the plaintiff was to pay for the hay and the expenses of the business, and the defendant was to collect the pay for the hay when sold and to furnish money as needed from time to time. There was some evidence tending to show that, by the terms of the arrangement, each was to share in the profits and losses equally. The books were kept by the defendant, in which the business transactions were entered under the heading of " Keeney & Griffin," and charges were made therein and credits given under that firm name. The defendant kept accounts of the business under that name in which were shown the prices upon the sale of the hay. Upon the trial the defendant alleged that the plaintiff was not to share the losses, and insisted that the arrangement was that the plaintiff was to have one-half the profits for doing the work. That position was controverted by the plaintiff, and considerable evidence was given tending to show that the parties were partners, and that when they figured up the business on the basis that the plaintiff was to stand one-half the losses, they treated the relations between them as that of copartners. The testimony given by Morgan was to the effect that in the forepart of January, 1893, he went with Keeney & Griffin to purchase hay and to introduce them to the farmers, and stated repeatedly that they were a new firm in Cuba that was responsible, and such statements were made in the presence of Keeney, who in no way objected to the same. Evidence was given in behalf of the plaintiff tending to show that a part of the arrangement was that he was to draw out for his household expenses, from time to time, such money as he should require. The defendant controverted that part of the alleged arrangement. The transactions were looked over between the parties at the end of each season, the first looking over being in June, 1893, and the amount of money furnished by Keeney and paid out by Griffin on different occasions was ascertained and posted in Keeney's books, and the defendant then esti-

mated the profits at $2,300 for the preceding year. It appeared that Griffin had drawn out about $816.56. Griffin kept no entries showing what moneys were received from the sale of hay, relying wholly upon the record of sales kept by Keeney at his office. At the end of the second season, and in the summer of 1894, the parties again went over the business and had a settlement and found that Griffin was charged with $1,414.01 more than he had paid out for hay and expenses, and at the time of that looking over it was ascertained that the business had not been as profitable as the preceding year, and the plaintiff then sought to withdraw and offered to turn over some property to balance his account, but the defendant insisted that he should continue in the business in the faith that they would have better results later on, and the business was continued until the spring of 1895 when a further settlement was had, and it was then found that the plaintiff had received only $444.50 more than he had paid out in the business that season, and on the conclusion of that settlement the plaintiff turned over to the defendant $1,145 in property and gave the defendant his note, signed by the wife of the plaintiff, for $1,000, allowing, apparently, the only profits to the plaintiff for the entire period of something less than $600. The note was subsequently put into a judgment and proceedings supplementary to execution were had. Prior to April 30, 1896, the plaintiff wrote to the defendant and inclosed him fifteen dollars to apply on the judgment. That draft was returned to the plaintiff in a letter written by the defendant to the plaintiff, dated April 30, 1896, which contained the following language:

" Mr. M. E. GRIFFIN, Pearl Creek, N. Y.:

" DEAR SIR.— Inclosed find your dft. for $15.00 returned. My patience is exhausted. I will wait until May 6th for you to pay me what you owe. Yours truly,

" F. B. KEENEY."

When the settlement of May 14, 1895, was made, the defendant executed a receipt to the plaintiff in the following words and figures:

" $1,000.00. CUBA, *May 14th,* 1895.

" Received of M. E. Griffin a note for one thousand dollars bearing date of April 15, 1895, in full of accounts to date.

" F. B. KEENEY."

When the defendant was examined before the justice he testified, viz. : " I fully made up my mind to institute criminal proceedings about early in May last, soon after I received the $15 and returned it." It was not claimed upon the trial that the plaintiff had made any false entries in the books, and while the business was being transacted the parties met frequently at the defendant's house. The defendant testifies, viz. : " I should think once a week, generally, and sometimes twice, and I don't know but occasionally three times. These frequent visits were kept up through the shipping season. As a rule we would talk about the hay and look over the books. * * . * He and I discussed the matters."

The evidence was sufficient to support a finding by the jury that the prosecution was without probable cause and with malice. (*Heyne* v. *Blair*, 62 N. Y. 22 ; *Wass* v. *Stephens*, 128 id. 128.)

The learned counsel for the appellant claims that the trial judge committed an error in refusing to yield to a request made at the close of the charge. The request was in the following language : " I ask your honor to charge that if the jury find that the relation of copartners did not exist between the parties, and if the plaintiff, without authority and consent of the defendant at the time, appropriated moneys furnished him for buying hay for other purposes, that the subsequent act of the defendant in settling as for a debt on an implied contract would be no bar to a criminal prosecution, and would not furnish evidence that the defendant did not believe that the money had been embezzled or misappropriated." The response made by the court to that was, viz. : " I decline to charge all that. I think that is a circumstance for them to take into consideration, at least, and give you the exception."

The learned judge, in the body of his charge, had observed, viz. : " That from my view of the case it is not of the utmost importance whether there was technically a copartnership relation existing between them or not. I do not regard it from the aspect that I take of this case, from the understanding that I have of it, of the great and vital importance that counsel seem to have as to whether that precise relation existed or not." And later on, in the course of the charge, he said : "As I stated to you at the outset, I do not regard it of the utmost importance whether the real relation between these two was that of copartners or not. If the defendant in this

case assented and acquiesced in this money being taken by the plaintiff; if he did that, knowing it and ratifying it, or consenting that it be done from time to time, then he could not, when disaster came, when the business failed and he was unable to collect the money out of it, charge him with committing a crime in taking this money. Because, as you see, to bring it down to a homely transaction, if your neighbor goes to your bin and takes out grain, you know about it and assent to it, trusting that you will collect it of him at some future time, and it turns out that your neighbor becomes irresponsible, or does not pay for any cause, you cannot then, for the purpose of collecting the pay or extorting the money of him, or for any other purpose, resort to the criminal law and charge him with the commission of a crime. Criminal laws are not made for that purpose — for the purpose of collecting debts. So I charge you, as a matter of law, that whether the relation between these two parties was that of partnership or not; if the taking of this money by the plaintiff from the defendant was regarded and treated by these parties simply as a debt between them, to be repaid by the plaintiff to the defendant out of the business, or in any other way; that is to say, that it was a simple debt between them, then he cannot, later on, arrest him for the appropriation of that money. It would not be an appropriation. It would simply be a debt existing from the plaintiff to the defendant, and he could simply collect it as he could any other debt. If this matter run along, each regarding the transaction as a business one, as a mere debt from Griffin to Keeney, culminating in the settlement of 1895, at the close of the business, adjusting the indebtedness at $2,719.00, without any design or suggestion that this was an embezzlement by Griffin, then Keeney could not, after all this, turn about and charge the plaintiff with the commission of a crime. Do not misapprehend me in this. They could adjust the civil matter and still a crime be perpetrated, because Keeney had a perfect right to secure his debt and then cause the arrest of Griffin for the commission of a crime, but he could not, during this whole business connection, treat this as a debt, acquiesce in the taking of the money by Griffin, and then, because of inability to get his pay, arrest him, accusing him of misappropriating the money, of the crime of grand larceny. And if that is so, gentlemen, he had

no right to resort to the criminal law for the purpose of collecting this debt. * * * And if he did that; if this defendant, in this case, resorted to this simply for the purpose of extorting this as a debt; if he thought that he could resort to the criminal laws and put the screws, as the expression is, to this plaintiff, and collect the money in that way, he had no right to do it."

The trial judge, in effect, had charged that the act of the defendant in settling would be no bar to a criminal prosecution, and he, therefore, was not required to repeat it; and whether such settlement furnished evidence that the defendant did not believe that the money had been embezzled or misappropriated, in conjunction with the other evidence, was for the jury to determine.

It was for the jury to determine, in connection with the other evidence, what effect should be given to " the subsequent act of the defendant in settling as for a debt on an implied contract;" and such seems to have been the understanding of the trial judge when he observed, viz. : " I think that is a circumstance for them to take into consideration at least." The request was somewhat involved, and we think the exception does not present an error requiring us to interfere with the verdict.

The learned trial judge was quite liberal with the defendant in the tone and spirit of his charge, and at the request of the defendant he charged the jury, viz., " that if the jury find that the charge made against the plaintiff was true no action will lie." And, further, he charged that " if they find the charge then made was true no action will lie;" and still further, he charged the jury that " it is not necessary to find the truth of the charge made in the criminal proceedings in order to excuse this defendant, but that the jury are only required to find probable cause." The last request was assented to by the trial judge when he said, viz., " Yes, I have so charged."

This case differs in its facts and circumstances from *Fagnan* v. *Knox* (66 N. Y. 525). In that case the court charged the jury that the settlement with the plaintiff for the moneys which the defendant afterwards charged the plaintiff with having embezzled " as and for a debt on contract, expressed or implied, such fact would be evidence that the defendant did not believe the plaintiff had embezzled the said moneys." That was a clear, definite, affirmative instruction that the settlement would be evidence that the defendant did not

believe the plaintiff had embezzled the money. In the case in hand it is to be observed that, in response to the request made by the learned counsel for the appellant, the trial judge simply observed, viz., "I think that is a circumstance for them to take into consideration." Besides, there is no exception taken to that remark made by the judge in terms. The learned chief judge, who delivered the opinion in *Fagnan* v. *Knox* (*supra*), said that the charge as there made "was calculated to produce an erroneous impression," and that it gave "undue prominence to the settlement against the defendant upon the question of probable cause." We think no such prominence or emphasis was given by the learned trial judge in the case in hand to the circumstances attending the several settlements revealed by the evidence. The trial judge casually remarked, when his attention was called to the instruction which he had given as to the settlement, that, in his opinion, it was "a circumstance for them to take into consideration." We think the charge as a whole conveyed to the jury the true rules of law applicable to the case in hand, and that the appellant has not shown an error by taking isolated portions of the charge and criticising them.

In *Hickenbottom* v. *D.*, *L. & W. R. R. Co.* (122 N. Y. 100) Bradley, J., said: "Although some portion of a charge, for the want of some qualification or explanation, may be subject to criticism, it is to be construed in the light of other portions of the charge so far as it may be, and if the charge as a whole presents the questions fully and fairly to the jury so as not to mislead them, exceptions to detached portions of it will not be effectual for the support of error."

We think the learned trial judge presented the case to the jury in as favorable a light as the evidence warranted, and that the verdict of the jury should remain.

All concurred, except Ward, J., not voting.

Judgment and order affirmed, with costs.