OWENS v. NEW ROCHELLE COAL & LUMBER CO.

(Supreme Court, Appellate Division, Second Department.   February 7, 1899.)

MALICIOUS PROSECUTION—PROBABLE CAUSE—EVIDENCE.

Plaintiff had contracted with M. to improve a lawn, and ordered goods to be used in making the improvement from defendant on M.'s account. The goods were delivered on M.'s premises, his wife receipted for them, and they were used in the improvement. M. refused to pay, claiming he had given plaintiff no authority to order them on his account. Defendant informed plaintiff of this, and told him he would be locked up if he did not pay for the goods. M. refused to give defendant his affidavit that he had not authorized plaintiff to buy the goods, saying the refusal was on the advice of counsel. Defendant made complaint to a justice against plaintiff for the larceny of the goods so purchased without first procuring M.'s attendance. *Held*, that the question of defendant's good faith, and whether he had probable cause, was for the jury.

Appeal from trial term, Westchester county.

Action by J. Jacob Owens against the New Rochelle Coal & Lumber Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

J. Addison Young, for appellant.
Michael J. Tierney, for respondent.

CULLEN, J.   The plaintiff made a contract to grade and make paths in a plot of land belonging to one Mapes. Crushed blue stone was necessary for the construction of the paths. The plaintiff testified that on applying to Mapes for some money to get the blue stone, Mapes told him that he was short of money, but directed him to order the stone from the defendant on his (Mapes') account. Thereupon the plaintiff ordered the blue stone from the defendant. The stone, amounting in value to $8.94, was delivered at the premises of Mapes, and Mrs. Mapes gave receipts for the deliveries. Mapes had a running account with the defendant, and some time after the delivery of the stone the defendant sent its bill to Mapes. After retaining the bill for some period, Mapes paid its amount, deducting the items of stone ordered by the plaintiff, and wrote, repudiating the authority of the plaintiff to order that stone on his account. Thereupon an officer of the defendant went to the plaintiff, and told him of Mapes' denial of any authority given by him to plaintiff to order the stone, and, according to plaintiff's testimony, said to him: "If you don't pay it, I will lock you up. That's all, now, and have no tomfoolery." In response plaintiff told the defendant's agent that Mapes had authorized him to purchase the goods. Shortly after, defendant wrote to the plaintiff, repeating Mapes' denial of authority, and concluding, "So we beg to say that unless you pay the bill by Friday at 3 p. m., we will take measures to make you do so." The plaintiff did not pay the bill, and thereupon the treasurer of the defendant went before a police justice, and made an affidavit charging the plaintiff with the offense of petit larceny, and procured the issue of a warrant on this charge. The plaintiff was arrested, and confined in the police station

until he gave bail. He was tried before a jury, and acquitted. On the trial, Mapes testified that he had given the plaintiff no permission to order the stone. The plaintiff testified to a conversation in which Mapes told him to order the stone, and this testimony was corroborated by two other witnesses, who swore they heard the conversation. After his discharge, the plaintiff brought this suit for his prosecution, and recovered a verdict, and from the judgment entered thereon this appeal is taken.

The only point that is raised on this appeal is that the evidence failed to show want of probable cause in instituting the prosecution, for, if the defendant had probable cause for the charge, it was not liable, though in fact the plaintiff might prove to be innocent. As to the details of the transaction, there was dispute only in one respect. That was whether Mapes had authorized the plaintiff to order the stone on his account. But, though this was the only primary fact in dispute, it was an essential element of the crime charged that the plaintiff should, in making the representation to the defendant of authority from Mapes, have intended to cheat and defraud the defendant. Such intent, though incapable of direct proof, was a fact as necessary to establish by the circumstances of the case as the lack of authority. Probable cause is defined to be "such a state of facts and circumstances as would lead a man of ordinary caution and prudence, acting conscientiously, impartially, reasonably, and without prejudice, upon the facts within his knowledge, to believe that the person accused is guilty." Heyne v. Blair, 62 N. Y. 19. And in determining whether there is probable cause or not the inquiry is not limited to facts within the prosecutor's knowledge, but the information given to the prosecutor by others may be shown. Miller v. Milligan, 48 Barb. 30; Bacon v. Towne, 4 Cush. 217. But the question of how far the information received from Mapes was a justification for the act of the defendant in causing the arrest of the plaintiff was not one of law for the court, but one of fact for the jury. Heyne v. Blair, supra; Wass v. Stephens, 128 N. Y. 123, 28 N. E. 21. The determination of that question depended upon two considerations,—the credibility of Mapes, and the attendant circumstances of the case. The defendant asked Mapes for his affidavit that he had given no authority to the plaintiff to order the stone. This Mapes, under the advice of his lawyer, as he said, had refused to give. The defendant, instead of procuring the attendance of Mapes before the magistrate when it applied for the warrant, had one of its officers make a positive affidavit of his own knowledge of the falsity of the plaintiff's representation when he ordered the stone, although concededly the knowledge of the affiant on that subject was solely the information received from Mapes. The stone was, in fact, delivered to Mapes' premises, and used thereon. The wife of Mapes had receipted for the goods. These facts, while they did not conclusively show an absence of intent on the part of the plaintiff to defraud the defendant, bore strongly on that question. Besides this, from the letter of the defendant to the plaintiff, and the threat to lock him up if the bill was not paid, it might be inferred that the prosecution was instituted simply to enforce payment of the debt. In fact, the treasurer of the defendant testified on this trial

that the reason he did not sue for the claim was that it would cost more than the amount of the claim. Under these circumstances, within the authorities cited above, we think that the good faith of the defendant, its belief in the guilt of the plaintiff, and the existence of probable cause for such belief, if the defendant had it, were for the jury to determine, and did not present a question of law to be decided by the court.

The judgment and order appealed from should be affirmed, with costs. All concur.