SCOTT v. DENNETT SURPASSING COFFEE CO.

(Supreme Court, Appellate Division, Second Department. May 29, 1900.)

1. MALICIOUS PROSECUTION—PROBABLE CAUSE.

    Plaintiff, a cashier in defendant's restaurant, turned over at the close of the day a sum equal to that shown by his cash slip and cash register, but not tallying with the checks showing orders. Defendant knew that plaintiff was not required to count the checks, and that the cutting punches used by the waiters were dull, and often failed to properly cut. During the day in question plaintiff twice left his desk, leaving the manager in charge. Similar deficits had occurred by mistakes of other cashiers, and defendant, in counting these same checks, had made a mistake.

One of defendant's employés testified that plaintiff had proposed a scheme to rob defendant, which involved the destruction of the checks. Plaintiff was arrested at the instance of defendant without opportunity for explanation, was tried, and acquitted. *Held*, in an action for malicious prosecution, that the question of defendant's probable cause for such arrest was for the jury.

**2. SAME—CORPORATION—LIABILITY.**

Where the secretary of a corporation, acting on the advice of its counsel, had an employé arrested and tried on a criminal charge without probable cause, the corporation is liable therefor in an action for malicious prosecution.

**3. SAME—EVIDENCE.**

In an action of malicious prosecution in causing plaintiff's arrest for an alleged shortage, a bond given by him to reimburse defendant for what it might lose through his mistakes or acts was admissible to show the employment of plaintiff and the nature of his service.

**4. SAME.**

In an action for malicious prosecution, plaintiff's testimony that after his arrest, and before his trial, defendant had said he had made a little mistake, and would withdraw the charge if plaintiff would release him, was admissible on the question of malice.

**5. HARMLESS ERROR—REJECTION OF TESTIMONY.**

The court's refusal to permit an answer to a question, though error, was harmless where all the facts within the scope of the question were immediately elicited from the witness.

**6. MALICIOUS PROSECUTION—DAMAGES.**

A verdict of $2,500 for plaintiff's arrest without probable cause for an alleged shortage in his accounts was not excessive.

Appeal from trial term, Kings county.

Action by William Scott against the Dennett Surpassing Coffee Company. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

Jacob Fromme, for appellant.

Wales F. Severance (Charles L. Greenhall, on the brief), for respondent.

JENKS, J.    The defendant appeals from a judgment entered on a verdict of a jury awarding to the plaintiff damages in $2,500 for a malicious prosecution and from an order denying a motion for a new trial. It is claimed that there was no proof of want of probable cause or of malice, that the prosecution was not brought home to the defendant corporation, that the verdict was contrary to law, that the damages were excessive, and that errors were made in various rulings upon the evidence.

Probable cause, unlike malice, is not determined by standard of the particular defendant, but of the ordinarily prudent and cautious man exercising conscience, impartiality, and reason without prejudice upon the facts. Heyne v. Blair, 62 N. Y. 19, and cases cited. And so mere honest belief in guilt is not enough; it must be founded upon reasonable grounds. Farnam v. Feeley, 56 N. Y. 451; Fagnan v. Knox, 66 N. Y. 525. For though he have belief, and yet act negligently and irrationally, the prosecutor may not have probable cause. The test, then, is not exclusively limited to the actual knowledge in

fact of the defendant, but may be put to any knowledge which he could or ought to have gained in the exercise of ordinary prudence and caution; and if, by such exercise, a proper investigation might have cleared away suspicious circumstances, and yet was omitted, there may be evidence of no probable cause. Add. Torts, 221; Sweet v. Smith, 42 App. Div. 502, 509, 59 N. Y. Supp. 404; Farnam v. Feeley, supra; Grinnell v. Stewart, 32 Barb. 544; 2 Greenl. Ev. 452; Barron v. Mason, 31 Vt. 189; Abrath v. Railway Co., 11 Q. B. Div. 440, 442, 450; Tabert v. Cooley, 46 Minn. 366, 49 N. W. 124, 13 L. R. A. 463. Were the rule otherwise, the omission of ordinary care and prudence would equal the exercise thereof, and rashness would rank with caution; and then, too, the question would not turn on the belief of the ordinarily prudent and cautious man, as the law is, but upon the belief of a defendant who might have been imprudent and incautious.

Addressing the case at bar, we first ask whether there was shown any knowledge of facts in the defendant that might explain the suspicious circumstances, and clear the accused in the eye of an ordinarily prudent and cautious man; for the defendant cannot escape by excluding them if they existed, and by putting forth the mere prima facie circumstances. Fagnan v. Knox, supra. And we next ask whether there were shown any facts that the defendant, acting with the care and prudence of an ordinarily cautious and prudent man, could or ought to have learned that should have stayed such a man in the prosecution. The plaintiff was charged, in an information laid by the secretary of the defendant, with the theft of $5.95 from the defendant on October 30, 1899, in that the plaintiff, as cashier of the defendant, had paid to another employé $148.85 as the total receipts of one night, as shown by his cash slip, and that, though this amount corresponded with the total of his cash-registering machine, it did not tally with the checks showing orders, as the defendant had ascertained by personal examination. A man of ordinary caution and prudence would be reasonably sure of his ground before making an accusation of crime upon a variance of a few dollars between the sum of the checks and the sum of the cash receipts representing the business of a single night, for the deficit might naturally have occurred through omission, inadvertence, or mistake. The plaintiff was arrested after two or three days, without intimation of suspicion, or opportunity for explanation. Upon arraignment he waived examination as to his defense, and was thereafter tried, acquitted, and discharged at the special sessions. About two weeks intervened his arrest and his discharge. The defendant had employed the plaintiff for two months as a cashier in one of its many eating houses. It furnished its waiters with checks in duplicate, and each check was, so to speak, an omnibus check, marked with various figures,—5 cents, 10 cents, 15 cents, etc.,—indicating various prices for victuals. When a customer had taken food, the waiter, using a cutting punch, would cut the price thereof out of the check, and would give the check to the customer, retaining the duplicate. The plaintiff, as cashier, would collect the sum or sums as indicated on the check, file the check, put the money in a drawer, and ring up

each payment on a cash-registering machine. When his work from 7 o'clock in the night until 7 o'clock in the morning was done, the plaintiff gave over his checks to another employé, counted up his receipts, and handed them, with a statement slip, to a third employé, who marked it "O. K." for audit if it corresponded with the cash register, whereupon the slip was sent to the main office. Such was the routine of the night in question. The plaintiff was not required to recount the 1,000 checks,—about the usual number,—which averaged about 15 cents each. Thus it appears that the defendant knew that plaintiff only ascertained that the cash returned tallied with the cash rung up, and that he was not required to compare the sum of his receipts with any sum found by his count or recount of the 1,000 checks. And yet, as stated, the criminal charge was founded solely upon a variance of a few dollars between the sum represented by the checks and the cash receipts, which, however, tallied with the registered amount on the machine. The testimony also showed that the cutting punches used by the waiters were dull, and often would not cut out the figures, and would but mar or dent the check, leaving the paper in the cut; and that this fact had shortly theretofore been reported to the local manager. An examination of the checks in question, made subsequent to the arrest, but previous to the criminal trial, showed that such was the condition of many of them, and that the defective cuts could not be detected "in the rush" of business, but only upon close inspection. The significance of this is that the waiter sometimes had attempted to cut a second or further amount upon one check, and that in the haste of the moment it might readily escape the eye. An essential fact in the criminal case, upon the evidence presented by the defendant, was the plaintiff's exclusive charge of the cash drawer during his hours, for a substitute might have received and filed checks without placing the payments thereon in the money drawer, and without indicating them upon the registering machine. Yet the plaintiff showed by three witnesses that during his hours of service upon that evening he was twice absent from his desk, at 8 o'clock and at 12 o'clock (once for a period of from 15 minutes to half an hour), when his place was taken by one Guinan, the local manager. In view of the basis of the criminal charge and the testimony offered on the part of the plaintiff, which is not here summed up, but indicated in part only, the learned trial court would not have been justified in dismissing the complaint at the close of the plaintiff's case for failure of proof of no probable cause. De Matteis v. La Maida, 74 Hun, 432, 26 N. Y. Supp. 471. It further appeared in the testimony of the defense that previous to the criminal trial the defendant had made a mistake in one of its own recounts of the checks; that it required of the plaintiff a bond, and an agreement permitting withholdings from salary for deficits, inasmuch as it realized that honest mistakes leading to such deficits might be made in the hurry of business, in the making of change and the like. It was admitted that similar deficits had previously occurred by errors and by mistakes of other cashiers in the same position during the time that Henry was the secretary of the defendant. The defendant offered testimony that previous to the arrest

one of its employés had informed it that the plaintiff had proposed a conspiracy to rob their employer that involved a destroyal of the checks, but it was not claimed that the alleged crime was in further- ance of any such scheme, or presented any similar features. It was given in evidence that advice of counsel was taken. We think the testimony of the defendant did not change the rights of the plaintiff, and that there was no error—certainly none to the prejudice of the defendant—in the submission of the question of probable cause to the jury. It is clearly established that, if the facts are undisputed, and admit of but one inference, probable cause is a question of law; but if the facts are in dispute, or admit of opposing inferences, the question is for the jury. Fagnan v. Knox, supra; Wass v. Stephens, 128 N. Y. 123, 28 N. E. 21. If the facts and law are closely knit, and so not easily susceptible of separate decision, the question is for the jury. Besson v. Southard, 10 N. Y. 240; Masten v. Deyo, 2 Wend. 424; Heyne v. Blair, supra; Stewart v. Sonneborn, 98 U. S. 187, 25 L. Ed. 116. In Heyne v. Blair, supra, after a review of the author- ities, the court say: "It is pre-eminently a question for the judg- ment of twelve men to determine what, upon a doubtful state of facts or upon facts from which different men would draw different conclusions,—that is, upon facts capable of different inferences,— would be the belief and action of men of ordinary caution and pru- dence." Advice of counsel does not form the basis for a finding of fact that the defendant had probable cause. Hazzard v. Flury, 120 N. Y. 223, 24 N. E. 194.

Malice may well be inferred from want of probable cause. In Burhans v. Sanford, 19 Wend. 417, Bronson, J., said, "Malice may be, and usually is, inferred in these actions from the want of prob- able cause." Heyne v. Blair, 62 N. Y. 20, 22; Wilder v. Holden, 24 Pick. 8. "Malice is exclusively a question for the jury." Stewart v. Sonneborn, supra.

It is claimed that the plaintiff failed to bring the prosecution home to the defendant. It is now settled that this action will lie against a corporation. Morton v. Insurance Co., 34 Hun, 366, affirmed in 103 N. Y. 645; Willard v. Holmes, 142 N. Y. 492, 37 N. E. 480. The defendant could act only through its officers and agents. Henry was its secretary. Previous to the arrest he had consulted with the gen- eral manager, who referred him to the defendant's general counsel. The counsel and Henry went before the magistrate, Henry, as secre- tary, laid the information charging the larceny from the defendant, and the proceedings and trial were conducted under his eye and that of the general counsel, who attended throughout, and made some suggestions, sitting with the district attorney. We think that this was sufficient to justify a submission to the jury. Morton v. Insur- ance Co., supra.

There are no errors in the rulings upon evidence available to the defendant. The bond and agreement above referred to were relevant and material upon the employment of the plaintiff and the surround- ings of his service. It was not error to permit the plaintiff to tes- tify that, pending the criminal proceedings, and before the criminal trial, Henry had said that "they" had made a little mistake, and

that "they" would withdraw the charge if the plaintiff would release "them." This testimony was relevant and material to the question of malice. Fitzjohn v. Mackinder, 9 C. B. (N. S.) 505, 530. It was competent under the facts shown as to Henry's authority in the premises and as part of the res gestæ of the criminal prosecution. Scott v. Railroad Co., 86 N. Y. 200, 208; Wild v. Mining Co., 59 N. Y. 644; Vanderbilt v. Mathis, 5 Duer, 304. The ruling does not offend Fag-nan v. Knox, supra, for the question there related to a repayment of a deficit, which was, of course, no evidence of belief that no crime had been committed. The refusal to permit an answer to the question put by the defendant to its secretary, "What was the first thing you heard in reference to Scott's doing anything wrong in the Fourteenth street place?" was error. Owens v. Lumber Co., 38 App. Div. 53, 55 N. Y. Supp. 913. But the error was harmless, inasmuch as the defendant immediately elicited all of the facts within the scope of the question theretofore excluded.

We have examined the other exceptions, and none has any merit. The amount of damages should not be disturbed. Damages in these cases may be based upon injury to person, reputation, and to pocket. Add. Torts, 230; Newell, Mal. Pros. The testimony of the plaintiff warranted the consideration of all these elements. The amount of damages affords no evidence in this case of intemperance in the minds of the jury, which necessarily, in this as in all cases of tort, had a broad discretion. The charge to the jury stands without exception, and is as considerate of the defendant as the law allows. The judgment and order should be affirmed.

Judgment and order affirmed, with costs. All concur.